Roger Murry SANTOS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–90–00961–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 9, 1992.

Discretionary Review Refused
April 15, 1992.

Barry Boorstein, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., J. Harvey Hudson, Asst., Tommy Lafon, Asst., Houston, for appellee.

Before DUGGAN, WILSON and MIRABAL, JJ.

## OPINION

MIRABAL, Justice.

After the trial court overruled appellant's motion to suppress, appellant pled guilty to possession of less than 28 grams of cocaine. The trial court placed him on deferred adjudication probation for 10 years and fined him $500. We affirm.

In his first point of error, appellant asserts the trial court erred in denying his motion to suppress, because the cocaine was seized after a pretext traffic stop.

■ The ruling of a trial court on a motion to suppress evidence will not be set aside absent a showing of abuse of discretion. *Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Crim.App.1985); *Tribble v. State,* 792 S.W.2d 280, 283 (Tex.App.—Houston [1st Dist.] 1990, no pet.). To determine whether the trial court abused its discretion, the evidence is viewed in the light most favorable to the ruling. *Daniels v. State,* 718 S.W.2d 702, 704 (Tex.Crim.App.), *cert. de-*

*nied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986).

■ At the hearing on a motion to suppress, the trial judge is the sole fact finder and, as such, may believe or disbelieve all of or any part of any witness' testimony. *Taylor v. State,* 604 S.W.2d 175, 177 (Tex. Crim.App. [Panel Op.] 1980). Therefore, any finding supported by the record will not be disturbed on appeal. *Green v. State,* 615 S.W.2d 700, 707 (Tex.Crim.App. 1980), *cert. denied,* 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981).

■ The relevant evidence at the suppression hearing, viewed in the light most favorable to the trial court's ruling, follows:

Officer Tomlinson, an 11–year veteran of the Houston police department, testified that appellant had been under investigation for narcotics trafficking. The police had received several anonymous tips about appellant's activity and his location. Tomlinson had appellant under surveillance on January 31, 1990. Tomlinson and his partner, Officer Rios, were in plain clothes. Another officer, Nessentheiler, in uniform and in a regular police car, was called and told to locate himself a small distance away as a backup unit. Appellant left his residence in a blue and silver Aerostar van, and Tomlinson and Rios followed him in their unmarked police car. Appellant drove down the street, in the direction of Nessentheiler, and ran a stop sign and changed lanes without signaling. Tomlinson radioed Nessentheiler to stop appellant for the traffic violations. Nessentheiler had also seen appellant run the stop sign. Tomlinson and Rios went on for half a block, and watched from a distance as Nessentheiler stopped appellant.

Tomlinson testified that Nessentheiler knew appellant was being investigated for narcotics activity. Nessentheiler arrested appellant for running the stop sign, for having no proof of insurance, and for not having a valid Texas operator's license. He called Tomlinson and Rios over to the van, after he had searched appellant and found vials of cocaine in his pockets. There was no warrant out for appellant's

arrest at that time, he did not commit a felony, and he did not try to escape once he was stopped. Tomlinson said Nessentheiler was the only officer who conducted a search, and Nessentheiler found a pistol and another vial of cocaine inside the van. Tomlinson read appellant his rights.

Officer Rios testified next. Rios said he had information from an informant that appellant had been selling drugs. Officer Nessentheiler stopped appellant for the traffic violation, placed appellant under arrest, and then called Rios and Tomlinson over. They helped with the inventory of the van, and Rios found a pistol in the door compartment of the van.

Rios said that the day they arrested appellant was the first day Rios was on the investigation. He knew Tomlinson had been investigating appellant for several months, and he had seen the clue slips Tomlinson had. Rios denied he or Tomlinson called Nessentheiler and said appellant had run a stop sign. He said Nessentheiler stopped appellant on his own.

Nessentheiler testified that he was a backup for the undercover officers on January 31, sitting just south of their position. The officers told him the suspect was being investigated for cocaine. They radioed that they were going to follow the suspect, who was coming in Nessentheiler's direction. The next radio communication was that the suspect had made an illegal lane change and ran a stop sign, both of which Nessentheiler said he also personally saw. On cross-examination, he said appellant made a "California stop."

Nessentheiler said he told the undercover officers he was going to stop appellant, and then pulled appellant over within half a block. He asked appellant for a driver's license and proof of insurance. Appellant had an out-of-state license, but had been in Texas over 30 days as evidenced by his vehicle registration. Appellant had no proof of insurance, and was not wearing a seat belt. Nessentheiler arrested appellant for four violations: no Texas driver's license, no insurance, running the stop sign, and not wearing a seat belt.

Nessentheiler said he searched appellant after arresting him. When he told appellant he was under arrest, he asked if appellant had any weapons, and appellant said there was a knife in his right pocket. Nessentheiler reached into appellant's pocket and found the knife and a small vial of white powder. He also found a vial containing white powder in appellant's left jacket pocket. Nessentheiler then went to inventory the van for towing, and found a baggie, inside a small white container, underneath the driver's seat. The baggie contained white powder. He said Rios found the pistol in the driver's side door pouch.

Nessentheiler said it was typical to arrest people for traffic violations when they do not have proper identification and commit a traffic violation. He said the other officers were not called to the scene until after he had arrested appellant. The officers had not instructed him to arrest appellant, just to stop him; it was his own decision to arrest appellant.

Nessentheiler said he did not write tickets for the traffic violations because they discovered the contraband. The van was not towed because appellant gave them consent to search his house, so they drove the van back to the house. He said he asked appellant, "why are you so nervous?", when he stopped appellant, because appellant was shaking.

It is appellant's contention that the traffic stop was merely a "pretext" to stop him and search for drugs; that the officers' real motivation was to substantiate their suspicion that appellant was involved in criminal activity.

■ The "pretext doctrine," which appellant relies on, no longer applies in Texas. The controlling rule, set out in *Gordon v. State*,[1] 801 S.W.2d 899 (Tex.Crim.App.

---

1. We note that *Gordon v. State* was a three-judge plurality opinion. We also note that, in dicta, this Court has previously questioned the soundness of that opinion in *Mendez v. State*, 817 S.W.2d 861, 862 (Tex.App.—Houston [1st Dist.], October 31, 1991, no pet.). However, *Gordon* has been followed by other appellate courts in *Foster v. State*, 814 S.W.2d 874, 881 (Tex.App.—

1990), is as follows: If a valid stop is made for any reason, (e.g., an actual offense), and the officer's objective conduct in response (i.e., search, questioning, transport) does not exceed the constitutional and statutory limits applicable to such a stop, additional subjective intentions, suspicions, or motivations on the part of the officers are irrelevant. *Id.* at 911.

 Police officers' routine duties include enforcement of the traffic laws, and a violation of those traffic laws is sufficient authority to stop the driver. *Armitage v. State,* 637 S.W.2d 936, 939 (Tex.Crim.App. 1982); *Archie v. State,* 799 S.W.2d 340, 344 (Tex.App.—Houston [14th Dist.] 1990), *aff'd.* 816 S.W.2d 424 (Tex.Crim.App.1991). In the present case, the trial court reasonably could have believed there was a valid basis for the stop—appellant ran a stop sign and changed lanes unlawfully. Officer Nessentheiler testified that his usual duty was the patrol division of the West Patrol Bureau. He said he personally saw appellant fail to stop at the stop sign and make an illegal lane change. Nessentheiler testified he stopped appellant at that point. The decision to arrest appellant was his own, and was based upon the violations he observed: appellant's lack of a valid Texas driver's license, no proof of insurance, failure to wear a seat belt, and running a stop sign. At that point, Officer Nessentheiler had probable cause to arrest appellant. Once an officer validly arrests a person, the officer may search the person and the area immediately associated with the person where the arrestee might reach to obtain a weapon or destroy evidence. *United States v. Robinson,* 414 U.S. 218, 222, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973); *Carrasco v. State,* 712 S.W.2d 120, 122 (Tex.Crim.App.1986). Appellant does not complain about the extent of the search after his arrest.

The evidence supports the conclusion that a valid traffic stop was made of appellant, and that the officers' conduct, analyzed objectively, was consistent with constitutional and statutory limits on such a stop. We hold the trial court did not abuse its discretion in overruling appellant's motion to suppress.

We overrule point of error one.

Appellant's second point of error is contingent on our not reaching the merits of his first point of error. Since we have considered and ruled on the merits of appellant's first point of error, the second point of error is moot.

We affirm the judgment.

Beaumont 1991, no pet.), and *Bobo v. State,* 805 S.W.2d 493, 495 (Tex.App.—Houston [14th Dist.] 1991, pet. granted); *see also Miller v. State,* 815 S.W.2d 805, 810 (Tex.App.—Austin 1991, no pet.).