Jason WOODEN

v.

The STATE of Texas.

No. 01–93–00117–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1994.

**386**

Leora Kahn, Bellaire, for appellant.

John B. Holmes, Jr., Alan Curry, Carol Sandvick, Colleen Barnett, Harris County, for appellee.

Before DUGGAN, MIRABAL and WILSON, JJ.

**OPINION**

DUGGAN, Justice.

After the court denied his motion to suppress, appellant, Jason Wooden, entered a plea of guilty to the felony offense of possession of more than four ounces and less than five pounds of marihuana. Pursuant to the plea agreement, the court assessed punishment at eight-years probation and a fine of $1000. Appellant asserts three points of error on appeal. We affirm.

On the evening of August 22, and the morning of August 23, 1992, Houston police officer Daniel D. Furstenfeld and Sergeant W.C. Pudifin were conducting a surveillance at the bus station at 2121 Main Street. The surveillance was in response to information that either (1) two black men carrying a kilogram of cocaine were to board a bus, or (2) two black men intended to hijack one black man carrying the cocaine. The officers wore plain clothes and carried concealed weapons.

At approximately 12:30 a.m., appellant and Edward Adair, both black males, got out of a jeep at the corner of the bus station, away from the designated passenger drop-off area at the front. Each carried similar carry-on black bags. Appellant walked into the bus station and stood in line at the ticket counter; Adair remained outside the station.

Both appellant and Adair were very nervous, and looked around the station in what appeared to the officers to be an effort to scan the area for police surveillance. Because it was common for individuals involved in illegal narcotics trafficking to act in this manner, Officer Furstenfeld told Sergeant Pudifin that they should keep an eye on them.

Adair then walked into the station, spoke with appellant, and went outside to the boarding area. Officer Furstenfeld heard Adair ask the bus driver to hold the bus until appellant came out with their tickets; the driver said he could not wait long. Adair ran into the ticket area, and then returned to the bus. Furstenfeld approached Adair and asked if he could speak to him. From this location, Furstenfeld could see neither the ticket counter nor appellant.

Meanwhile, Officer Pudifin was observing appellant waiting at the ticket counter. Appellant never put his bag down, but instead clutched it tightly. Pudifin described this as unusual behavior for innocent passengers. Appellant purchased his tickets and went to the lobby area. Pudifin testified that he walked next to appellant and asked to speak with him; appellant stopped walking and agreed. Pudifin identified himself as a Houston police officer and told appellant that he was free to leave. Although Furstenfeld

was not able to hear the conversation, he testified he saw that Pudifin was standing against a wall, and appellant had a free path to leave if he so desired.

Pudifin told appellant that he "understood he was going to be late catching his bus." In response to Pudifin's questions asking where appellant was going and if Pudifin could see his ticket, appellant said he was going to Oklahoma, and handed Pudifin the two tickets. Pudifin looked at the tickets, and returned them to appellant. Pudifin said that appellant's voice was cracking, which was unusual. Pudifin told appellant he was a narcotics officer and asked if he was carrying drugs. Appellant dropped the bag, raised his hands, said he did not have any, and the bag was not his. In response to Pudifin's question, appellant again said it was not his bag. Pudifin told appellant that he presumed the bag was abandoned and that he would look inside of it, but that appellant did not have to allow him to look. Furstenfeld, who could then hear the conversation, said that appellant told Pudifin, "I don't care what you do with the bag. You can look at if you want to. It's not mine." Furstenfeld further said that appellant stepped away from the bag and again said, "I don't care what you do. It's not my bag." Pudifin then told appellant that he could go if he wanted to catch his bus. Appellant stayed while Pudifin searched the bag and found a box which contained the marihuana.

Contrary to the two officers' testimony, appellant testified that he was not nervous; he further said that Officer Pudifin never returned the tickets to him. Appellant claimed that when Pudifin reached for his identification, appellant saw Pudifin's pistol, and therefore did not believe he could refuse the request to search the bag. After Pudifin showed appellant his badge and appellant saw the gun, appellant said, "The bag doesn't belong to me, it's my friend's. But we can check the bag."

In points of error one and two, appellant contends the seizure and search of his bag were in violation of the fourth amendment to the United States Constitution and article one, section nine of the Texas Constitution.

A trial court's ruling on a motion to suppress will not be set aside absent a showing of abuse of discretion. *Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Crim.App.1985); *Santos v. State,* 822 S.W.2d 338, 339 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). To determine whether the trial court abused its discretion, the evidence is viewed in the light most favorable to the ruling. *Daniels v. State,* 718 S.W.2d 702, 704 (Tex.Crim.App. 1986). At the hearing on a motion to suppress, the trial judge is the sole fact finder, and as such, may believe or disbelieve all of or any part of any witness' testimony. *Taylor v. State,* 604 S.W.2d 175, 177 (Tex.Crim. App. [Panel Op.] 1980); *Santos,* 822 S.W.2d at 339. Any finding supported by the record will not be disturbed on appeal. *Id.*

We first consider whether the initial encounter between Officer Pudifin and appellant became a detention, implicating constitutional guarantees. For the purposes of the United States and the Texas constitutions, a defendant is detained if, from his or her point of view, there has been such a display of official authority that "a reasonable person would have believed he was not free to leave." *Morrow v. State,* 757 S.W.2d 484, 490 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd) (citing *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)). Not all encounters between individuals and the police implicate constitutional guarantees. *Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983). "An officer may stop a suspicious individual briefly to determine his/her identity or to maintain the status quo while obtaining further information." *Comer v. State,* 754 S.W.2d 656, 657 (Tex.Crim.App. 1986).

Officer Pudifin had information predicting the transportation of narcotics at the bus station. The officers were informed that either two black men carrying a kilogram of cocaine were to board a bus, or that two black men intended to hijack one black man who would be carrying the cocaine. In response to this information, the officers were surveilling the bus station, and saw appellant and Adair, two black males, get out of a car. Pudifin described the following activities: (1)

appellant and Adair were dropped off at a location other than that designated as the passenger drop-off area; (2) they arrived shortly before their scheduled departure; (3) they were very nervous, and scanned others as if they were checking for surveillance; and (4) appellant clutched his bag tightly, and did not put it down while standing in line.

In response to these activities, Pudifin approached appellant and began questioning him. Pudifin testified that he spoke in a normal tone of voice; he did not display a weapon; he was dressed in plain clothes; he asked appellant's permission to speak to him and appellant agreed; and more than once, he told appellant he was free to leave. Viewed in the light most favorable to the trial court's ruling, we find the evidence sufficient for the trial judge to find that, from appellant's point of view, there was not such a display of official authority that a reasonable person would have believed he was not free to leave; therefore, there was no detention.

Appellant contends that any abandonment by him was involuntary because it resulted from an unlawful detention, which constituted police misconduct. It is only where we find police misconduct that we must decide whether appellant voluntarily abandoned the bag. *See Comer*, 754 S.W.2d at 656. Because we have determined there was no detention at the time appellant abandoned the bag, appellant's argument fails.

Appellant asks that we reach his third point of error only if we fail to reach the merits of his first two points of error; thus, we need not address point of error three.

We overrule appellant's points of error and affirm the trial court's judgment.