**Lawrence Howard FRANCIS, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–94–00728–CR to 01–94–00731–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

April 6, 1995.

Bruce W. Cobb, Beaumont, for appellant.

Michael J. Guarino, B. Warren Goodson, Jr., Galveston, for appellee.

Before COHEN, TAFT and HEDGES, JJ.

## OPINION

TAFT, Justice.

Appellant, Lawrence Howard Francis, Jr., appeals his convictions for burglary of a habitation (trial court cause no. 93CR1117) and felony escape (trial court cause no. 93CR1118). He also appeals two separate adjudications of guilt for burglary of a vehicle (trial court cause nos. 93CR0646 and 93CR0647). Appellant pled not true to the motions to adjudicate and no contest to the other offenses. The trial court assessed punishment, pursuant to a plea agreement, at concurrent five-year sentences for the burglary of a habitation and escape offenses. The trial court adjudicated appellant's guilt and also assessed concurrent five-year sentences for the burglary of a vehicle offenses.

In three points of error, appellant challenges the trial court's denial of his motion to suppress in all four cases. This appeal requires us to examine the standards used to distinguish a detention from an arrest. We affirm.

1. *Miranda v. Arizona*, 384 U.S. 436, 467–73, 86 S.Ct. 1602, 1624–27, 16 L.Ed.2d 694 (1966).

2. Unlike evading arrest, the offense of escape has no defense for unlawfulness on the part of the officers making the arrest. *See* Tex.Penal Code

## Summary of Facts

On July 3, 1993, Todd Simms and Todd Sexton returned from work to find their apartment had been burglarized. While waiting for the police, they noticed a man, later identified as appellant, carrying two bags inside the fenced apartment complex. When Officer Alfred Paige arrived, Simms and Sexton noticed the same man walking away from the apartment with a duffel bag Simms recognized as his own. Simms and Sexton gave this information to the officer and pointed out appellant who was approximately 100 yards away.

Officer Paige drove up to appellant and asked his name. After exiting his patrol car and conducting a weapons pat-down for his own safety, Paige put appellant in the patrol car and advised him that he had been observed leaving the area of a burglary and they were going back to the scene. Officer Paige testified that he had reason to believe that appellant was a suspect and that the bags were involved in the burglary. He also testified that appellant was not free to leave. Officer Paige placed appellant's bags on top of the trunk of the patrol car, and drove a couple of blocks back to the apartment.

While appellant waited in the car, Simms and Sexton identified the bags as their own and described the missing contents, which Paige removed from the bags. Officer Paige then opened the car door for appellant, advised him that he was under arrest for burglary, and read him the *Miranda*[1] warnings. When Paige reached for his handcuffs, appellant ran down the road. After a short chase, Officer Paige apprehended appellant.

## Suppression: the Burglary and Escape Convictions

In his first point of error, appellant argues that the trial court erred in denying his motion to suppress in cause numbers 93CR1117 (the burglary of a habitation) and 93CR1118 (the escape).[2] Appellant contends that he was illegally arrested when first

Ann. §§ 38.04, 38.06, 38.08 (Vernon 1994). Appellant's motion to suppress must still be considered, however, in regard to the burglary of a habitation offense.

stopped by Officer Paige because he was placed in the patrol car and was not free to leave. He admits, however, that a temporary investigative detention would have been justified at that point.

 A trial court's ruling on a motion to suppress will not be set aside absent a showing of abuse of discretion. *Santos v. State,* 822 S.W.2d 338, 339 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). To determine whether the trial court abused its discretion, the evidence is viewed in the light most favorable to the ruling. *Id.* At the hearing on a motion to suppress, the trial judge is the sole fact finder and may believe or disbelieve all or any part of the witnesses' testimony. *Id.* Any finding supported by the record will not be disturbed on appeal. *Id.*

As noted by appellant, the issue is whether his detention was an investigative detention or an arrest, because the nature of the detention determines the constitutional parameters that apply to determine its legality. *Amores v. State,* 816 S.W.2d 407, 411 (Tex. Crim.App.1991). Although this case requires us to distinguish between an investigative detention and an arrest, it is helpful to place the issue in context by first examining all three categories of police-civilian interaction.

## A. Three Categories of Police–Civilian Interaction

In *Terry v. Ohio,* 392 U.S. 1, 13, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889 (1968), the Supreme Court described the rich diversity of police-civilian interactions: "They range from wholly friendly exchanges of pleasantries or mutually useful information to hostile confrontations of armed men involving arrests, or injuries, or loss of life." The court eschewed the suggestion that the Fourth Amendment did not apply to a stop, as it would to an arrest:

> We emphatically reject this notion. It is quite plain that the Fourth Amendment governs "seizures" of the person which do not eventuate in a trip to the station house and prosecution for crime—"arrests" in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person.

*Terry,* 392 U.S. at 16, 88 S.Ct. at 1877. The court had no occasion to address the constitutional propriety of an investigative "seizure," upon less than probable cause, for purposes of "detention" or interrogation, or both. *Terry,* 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16. Nevertheless, *Terry* established the framework for recognizing three categories of police-civilian interaction: (1) encounter; (2) detention; and (3) arrest. Only detentions and arrests were determined to amount to "seizures" of persons. *Terry,* 392 U.S. at 19, 88 S.Ct. at 1879.

In *Terry,* the Supreme Court also established an analytical approach employing an objective determination of whether, under the circumstances, the particular intrusion was reasonable based on possession by the police officer of specific and articulable facts, taken together with rational inferences from those facts. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880.

The three categories of police-civilian interaction have been recognized in subsequent cases, both federal and state. *See, e.g., Florida v. Royer,* 460 U.S. 491, 498–502, 103 S.Ct. 1319, 1324–1326, 75 L.Ed.2d 229 (1983) (recognizing all three); *Daniels v. State,* 718 S.W.2d 702, 704 (Tex.Crim.App.) (recognizing encounters and detentions), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986); *Amores,* 816 S.W.2d at 411 (recognizing detentions and arrests).

### 1. Encounter

*Terry* portrayed one end of the spectrum of police-civilian interaction as "friendly exchanges of pleasantries or mutually useful information" and pointed out that "[o]bviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons." 392 U.S. at 13, 19 n. 16, 88 S.Ct. at 1875, 1879 n. 16. *Terry* spoke of "encounters" initiated by the police for a wide variety of purposes, some of which are wholly unrelated to a desire to prosecute a crime. 392 U.S. at 13, 88 S.Ct. at 1876.

 It is now well settled that law enforcement officers do not violate the Fourth Amendment by merely approaching an indi-

vidual in public to ask questions. *Florida,* 460 U.S. at 498, 103 S.Ct. at 1324; *Daniels,* 718 S.W.2d at 704. This encounter does not require any justification whatsoever on the part of an officer. *United States v. Mendenhall,* 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); *Daniels,* 718 S.W.2d at 704.

## 2. Detention

■ In *Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), the Supreme Court defined the "stop" which allows the "frisk" in *Terry v. Ohio:* "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." This stop was identified as an "intermediate response" for which an officer need not have the precise level of information necessary for probable cause to arrest. *Adams,* 407 U.S. at 147, 92 S.Ct. at 1923. Such a temporary detention requires that an officer have reasonable suspicion that a person is involved in criminal activity. *Royer,* 460 U.S. at 497, 103 S.Ct. at 1324; *Daniels,* 718 S.W.2d at 704–05.

## 3. Arrest

■ *Terry* spoke of "arrests" in terms of traditional terminology, i.e., "seizures" which "eventuate in a trip to the station house and prosecution for crime." 392 U.S. at 16, 88 S.Ct. at 1877. Of course, it is well established that an arrest must be justified by probable cause to believe that the suspect has committed, or is committing, an offense. *Henry v. United States,* 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959); *Amores,* 816 S.W.2d at 411, 413.

## B. Conflicting Standards for Distinguishing Arrests from Detentions

Appellant relies upon *Hoag v. State,* 728 S.W.2d 375 (Tex.Crim.App.1987) for the proposition that an arrest occurs when a person's liberty of movement is restricted or restrained. He relies upon TEX.CODE CRIM. PROC.ANN. art. 15.22 (Vernon 1977) for the proposition that a person is arrested when he has been actually placed under restraint.

Appellant also relies upon *Hawkins v. State,* 758 S.W.2d 255 (Tex.Crim.App.1988) for the proposition that a person has been "seized" only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Appellant argues that by placing him in the back seat of the patrol car and by acknowledging that he was not free to leave, Officer Paige had arrested appellant.

This court has previously held that placing a motorist in a patrol car did not amount to a custodial arrest so as to require *Miranda* warnings, despite the officer's testimony that the motorist was not free to leave during the traffic stop. *Keaton v. State,* 755 S.W.2d 209, 210 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). Another court has held that a suspect may be briefly transported to the scene of the crime for identification purposes as part of a valid temporary investigative detention. *Joseph v. State,* 865 S.W.2d 100, 103 (Tex.App.—Corpus Christi 1993, pet. ref'd); *Davis v. State,* 783 S.W.2d 313, 317 (Tex.App.—Corpus Christi 1990, no pet.).

There appears to be a conflict here. When one is stopped by a police officer, even for a traffic offense, as in *Keaton,* one's liberty of movement has certainly been restricted or restrained. When one is confined within the back seat of a patrol car and transported back to the crime scene for possible identification, as in *Joseph* and *Davis,* one has been actually placed under restraint. One is not free to leave in either situation.

The apparent conflict arises from the use of inadequate standards by which to distinguish an arrest from a temporary investigative detention. Examples of inadequate standards are the three approaches upon which appellant relies: (1) whether one's liberty of movement has been restricted or restrained; (2) whether a person has been actually placed under restraint; and (3) whether a reasonable person would have believed that he was not free to leave.

## 1. Liberty of Movement Restricted

In claiming that an arrest occurred when his liberty of movement was restricted, appellant cites *Hoag,* which states: "An arrest

is complete when a person's liberty of movement is restricted or restrained." 728 S.W.2d at 379 (citing *Hardinge v. State*, 500 S.W.2d 870 (Tex.Crim.App.1973)). The origin of this language is *Henry*, 361 U.S. at 103, 80 S.Ct. at 171 ("When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete."). *Hardinge*, 500 S.W.2d at 873. *Henry* predates *by nine years* the emergence of the *Terry* doctrine of temporary investigative detentions.

"Restraint of liberty of movement" is not an adequate standard for distinguishing between an arrest and a detention because *it is a characteristic common to both*. Its derivation explains why it cannot be expected to be useful for the task. That is, it arose at a time when arrest was the only category of seizure.

### 2. Actual Restraint

In claiming he was actually restrained, appellant refers to TEX.CODE CRIM.PROC.ANN. art. 15.22 (Vernon 1977), which defines when a person is arrested in Texas: "A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant."

This definition was also enacted prior to the emergence of the concept of a temporary investigative detention. *Amores*, 816 S.W.2d at 418 n. 3. Likewise, it cannot be useful to distinguish arrests from temporary investigative detentions because it could not have been designed with this purpose in mind. Indeed, it is difficult to see any meaningful difference between "being actually placed under restraint" and "one's liberty of movement having been restricted or restrained." [3]

Recent cases do not rely *solely* on article 15.22, but utilize a totality-of-the-circumstances approach. In *Hoag*, for example, the court cites article 15.22, as well as the restricted liberty language, but also considers the officer's opinion "along with the other facts and circumstances of the detention, in determining whether an arrest has taken place." 728 S.W.2d at 379.

In *Amores*, as in *Hoag*, the analysis refers to language about an arrest occurring when a person's liberty of movement is restricted or restrained, as well as the actual restraint language from article 15.22. *Amores*, 816 S.W.2d at 411. After concluding that the facts were sufficient to demonstrate an arrest, the *Amores* court examined the effect of the officer's characterization of the stop as an investigative detention. *Id.* at 412. The court observed that the officer's characterization of the stop as an investigative detention was belied by the fact that he had not conducted an investigation. *Id.*

Based on its similarity to the first inadequate standard regarding restricted liberty, fortified by the approach taken in recent cases, we conclude that the article 15.22 arrest definition is inadequate, *by itself,* to be used as the standard for distinguishing arrests from investigative detentions.

### 3. Not Free to Leave

In claiming that he was arrested because he was not free to leave, appellant relies on *Hawkins*, 758 S.W.2d at 259 (citing *United States v. Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877 for the proposition "that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would not have believed that he was not free to leave").

The main difficulty with the "not free to leave" standard is the same as with the previous two standards: *one is not free to leave both when arrested and when temporarily detained for investigation.* The "not free to leave" standard was designed *only* to define "seizure," a term which includes both arrests and temporary investigative detentions. "Not free to leave" is useful to distinguish a seizure from an encounter; it does nothing to

---

3. Although "restrain" is not defined in the Code of Criminal Procedure, it is defined for purposes of chapter 20 of the Penal Code:

"Restrain" means to restrict a person's movements without consent, so as to interfere sub-

stantially with his liberty, by moving him from one place to another or by confining him. TEX.PENAL CODE ANN. § 20.01(1) (Vernon 1994).

help, but much to hinder, the task of distinguishing a detention from an arrest.

## C. Preferred Approach

In *Terry*, the Supreme Court cautioned against making too much of the labels (stop versus arrest) because of the necessity to examine each level of police intrusion to assure that it is reasonable. 392 U.S. at 17, 88 S.Ct. at 1877–78. Thus, it is more useful to examine each progressive level of intrusion to determine if it is reasonable under the circumstances based on the information known to the officer at the time rather than to focus on a particular segment of the transaction to see if it fits into a particular category of police intrusion. In the present case, for example, there is a typical escalation of intrusion as the information known to the officer increased during the course of his investigation.

In the two Texas cases which found that taking a suspect back to the scene of the crime for possible identification constituted a valid temporary investigative detention, the court began its analysis with a determination of whether the initial seizure was a valid detention. *Joseph,* 865 S.W.2d at 102–03; *Davis,* 783 S.W.2d at 317–18. Once a valid initial stop was found, and it was further determined that the officers did not exceed the scope of a temporary investigative detention, it was unnecessary to apply the arrest definition.

We observe that many Texas cases analyze whether a particular seizure is a detention or an arrest by jumping straight to the definition of arrest. *See, e.g., Hardinge,* 500 S.W.2d at 873; *Woods v. State,* 466 S.W.2d 741, 743 (Tex.Crim.App.1971); *Pickens v. State,* 712 S.W.2d 560, 562 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd); *Gilmore v. State,* 666 S.W.2d 136, 142–43 (Tex.App.—Amarillo 1983, pet. ref'd). This approach runs into difficulty for two reasons: (1) it conflicts with the analysis established by the Supreme Court beginning in *Terry;* and (2) it utilizes definitions of arrest which arose

prior to the advent of the doctrine of temporary detentions. As noted above, the concept of arrest in *Terry* was the traditional one, i.e., a seizure which eventuated in a trip to the station house and prosecution for crime. 392 U.S. at 16, 88 S.Ct. at 1877.

■ We discern that the direction of the Court of Criminal Appeals, as demonstrated by such cases as *Hoag* and *Amores,* is to determine whether an arrest or temporary investigative detention has occurred by looking at all of the circumstances surrounding the incident. This is consistent with the standard established by the Supreme Court in *Terry.* 392 U.S. at 21, 88 S.Ct. at 1880 (employing an objective determination of whether, under the circumstances, the particular intrusion was reasonable based on the specific, articulable facts possessed by the police officer).

Furthermore, we prefer the approach of *Joseph* and *Davis* which starts at the beginning of the officer's intrusion and evaluates the reasonableness of each incremental level of intrusion based on the information possessed by the officer at that time. This method is also consistent with the approach established by the Supreme Court in *Terry.* 392 U.S. at 18–19, 88 S.Ct. at 1878 (requiring scrutiny of the initiation, intensity, and scope of police action).

With this standard in mind, we apply the law to the facts.

## D. Application to the Facts

■ Appellant was asked his name, patted down, placed in the patrol car without further restraint, and returned a short distance to meet the complainants who identified their missing property. Unlike the seizure in *Amores,* upon which appellant relies, the restraint utilized in the present case was minimal.[4] More importantly, the officer's actions were consistent with the execution of a temporary investigative detention:

 1. Officer Paige maintained the status quo while obtaining the identity of ap-

---

4. In *Amores,* the defendant's car was blocked by the officer's patrol car whereupon the officer ordered the defendant to get out of his car at gunpoint, then ordered the defendant to lie face

down on the ground with his hands behind him under threat, "If you don't do what I tell you to do, I'm gonna shoot you." 816 S.W.2d at 410.

pellant and performing a brief investigation to confirm or dispel his suspicions by returning appellant and the suspected stolen property a short distance for identification by the victims.

2. The initial seizure was brief.

3. As Officer Paige testified, he had reason to believe appellant was a suspect in possession of property stolen in the burglary based on the information he had received from the victims.

4. Officer Paige initially asked appellant only his name and informed appellant that he had been seen leaving the area of a burglary in explaining why he was taking appellant back to the scene. (This action contrasts with the officer's actions after the duffel bags and their contents had been identified. At that point, Officer Paige told appellant he was under arrest, gave him *Miranda* warnings, and was about to handcuff appellant when he fled.)

5. Officer Paige conducted only a patdown for his own safety.

6. The restraint employed, placing appellant in the back seat of the patrol car, was reasonable under the circumstances.

An objective analysis of the totality of the circumstances demonstrates that Officer Paige's initial seizure of appellant was a temporary investigative detention. The fact that appellant was "actually restrained" and "not free to leave" does not change the character of the seizure from that of a detention to that of an arrest. Officer Paige did not attempt to actually arrest appellant until the property was identified as belonging to the burglary victims. The facts of this case include both a detention and an arrest, vividly illustrating the differences between the two.

As admitted by appellant, Officer Paige had specific articulable facts which warranted a temporary detention. We find that the initial seizure in this case is a classic example of a valid temporary investigative detention. Thus, we hold that the trial court did not abuse its discretion in denying appellant's motion to suppress.

We overrule appellant's first point of error.

**Suppression: the Motions to Adjudicate**

In his second and third points of error, appellant argues that the trial court erred in adjudicating guilt in cause numbers 93CR0646 and 93CR0647 because the adjudications were based on evidence that should have been suppressed.

A defendant who receives deferred adjudication probation may appeal from pretrial motions relating to the *original* conviction. *Dillehey v. State,* 815 S.W.2d 623, 626 (Tex. Crim.App.1991); TEX.CODE CRIM.PROC.ANN. art. 44.01(j) (Vernon Supp.1995). However, a defendant may not appeal from pretrial motions considered during the adjudication proceedings. *Reagan v. State,* 832 S.W.2d 125, 127 (Tex.App.—Houston [1st Dist.] 1992, no pet.); *Wienbrink v. State,* 825 S.W.2d 259, 260 (Tex.App.—Houston [1st Dist.] 1992, no pet.); TEX.CODE CRIM.PROC.ANN. art. 42.12, § 5(b) (Vernon Supp.1995).

Here, appellant is not appealing from the original conviction or from a pretrial ruling on the original conviction. Appellant is appealing the ruling on a motion to suppress evidence considered at the motion to adjudicate guilt. Thus, we need not address appellant's points of error concerning the determination of guilt. *Reagan,* 832 S.W.2d at 127.

We overrule appellant's second and third points of error.

**Conclusion**

We affirm the trial court's judgments in all four cases.