**The STATE of Texas, Appellant,**

v.

**Allen Brian VELASQUEZ, Appellee.**

**Nos. 01–97–00317–CR, 01–97–00318–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 30, 1998.

Rehearing Overruled June 4, 1998.

John B. Holmes, Rikke Burke Graber, Houston, for Appellant.

Candelario Elizondo, Houston, for Appellee.

Before MIRABAL, O'CONNOR and NUCHIA, JJ.

## OPINION

MIRABAL, Justice.

The question presented is whether a "detention" occurred during an encounter with police officers on a Greyhound bus.

Defendant Allen Brian Velasquez was charged with two felony offenses: possession of cocaine with the intent to deliver,[1] and possession of marihuana.[2] The trial court granted defendant's motion to suppress evidence, and the State appeals. We affirm.

In a sole point of error, the State asserts the trial court erred in finding that defendant was detained by the police prior to his abandonment of the contraband.[3]

■ We generally review a trial court's ruling on a motion to suppress for abuse of discretion. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim.App.1985); *Santos v. State*, 822 S.W.2d 338, 339 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). However, when presented with a question of law based on undisputed facts, we apply a *de novo* review. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997) (holding that *de novo* standard applies to motion to suppress involving mixed questions of law and fact not turning on the credibility of witnesses). Where the resolution of mixed questions of law and fact turns on an evaluation of credibility and demeanor, we still review the evidence in the light most favorable to the trial court's ruling. *Guzman*, 955 S.W.2d at 89.

In the present case, the trial court specifically found that "defendant engaged in a consensual conversation with Officer Corley while on the bus," and that "Corley is a credible witness, and the Court accepts as true his testimony regarding his observations of the defendant and his conversation with the defendant." Officer Corley testified as follows:

A minute or two before 6:00 a.m. on August 22, 1996, defendant boarded a Greyhound bus scheduled to depart from the bus station at 6:00 a.m. Houston Police Officers Corley and Ordaz then talked to the bus driver, said they were police officers, and entered the bus. The officers were not in uniform. Ordaz sat down in a seat a couple of rows in front of defendant. Corley walked past defendant towards the back of the bus, turned around and came back, and stopped just behind defendant. Corley squatted down in the aisle. He leaned over, showed defendant his badge, identified himself as a police officer, and asked defendant if he could talk to him. Defendant replied, "Sure." When Corley asked his destination, defendant responded, "Corpus Christi." When Corley asked if he could see defendant's ticket, defendant responded affirmatively, gave Corley his ticket and said, "Well, I'm actually going to Victoria." Victoria is the mid-point of the trip between Houston and Corpus Christi. Corley returned the ticket. In response to Corley's request, defendant then gave Corley his driver's license. The names on the driver's license and bus ticket matched. Corley gave the driver's license back to defendant. Corley asked defendant if he was going to Victoria on business, and defendant said, "No, he lived there." Corley asked defendant how long he had been in Houston, and defendant said he had been there for several days. As defendant was talking to Corley, he was looking around, instead of looking directly at Corley. Corley asked defendant if he had any luggage and defendant responded that he had no luggage. During the conversation up to this point, defendant had not touched the black duffel bag sitting on the seat next to him.

---

1. Trial court cause no. 730, 877; appeal no. 01–97–00317–CR.

2. Trial court cause no. 730, 878; appeal no. 01–97–0318–CR.

3. Whether or not the police had reasonable suspicion to detain defendant is not an issue in this case; we assume, without deciding, that there was no reasonable suspicion to justify an investigative detention by the police officers. The sole question presented is whether there was a "detention" prior to the abandonment of the drugs.

Corley testified he then pointed to the bag and asked defendant if it was his, to which defendant replied, "No, that's not my bag." When Corley then reached to pick up the bag, defendant put his hands on it and said, "What are you doing?" to which Corley replied, "I'm getting this bag. Is it your bag?" Defendant said, "Uh, no, it's not." Corley testified that at that point, defendant took his hands off the bag, and Corley picked it up. Corley asked defendant if he could look in the bag and defendant said, "It's not my bag." Corley sat it in the aisle next to defendant and opened it, saw what appeared to be marihuana, and told defendant he was under arrest. When they reached the security office, the officers completed the search of the duffel bag, and found inside it two bags of marihuana and a bag of cocaine. Corley admitted the encounter with defendant lasted past 6:00 a.m., and the bus did not depart on time.

Officer Ordaz testified that it is normal practice for police officers to talk to the bus driver before boarding a bus to tell the driver that they are narcotics officers and that they plan to talk with someone on the bus. He knows the bus will not leave while the officers are on the bus.

Defendant testified that after he got on the bus, he saw the two officers come on the bus; one of the officers grabbed the door handle and closed the door. Officer Corley walked past him and then came right at him. "He said his name, he was an officer with the Houston Police Department, showed me his badge.... He said he had reason to believe that I was carrying narcotics." Everybody started standing up in their seats and looking over their seats at defendant. Defendant felt humiliated and scared. According to defendant, by the time the officers were talking to him, it was 6:00 a.m. and the bus should have left. Defendant told Corley the black bag did not belong to him because he was scared and intimidated; he thought Corley could be a "stranger coming to take my bag from me or something." Corley was positioned so that he blocked defendant's way—defendant couldn't get up.

The trial court specifically concluded that the officers detained the bus to conduct their investigation, and defendant abandoned the black bag as a result of police activity. The trial court ruled that the fruits of the illegal detention were inadmissible as evidence.

 The State correctly notes that not every encounter between a police officer and another person implicates the Fourth Amendment of the U.S. Constitution. *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). Nor does a consensual encounter necessarily implicate article 1, section 9 of the Texas Constitution. *State v. Grant*, 832 S.W.2d 624, 628–29 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd), *citing Gearing v. State*, 685 S.W.2d 326, 328–29 (Tex.Crim.App.1985). The State argues that the standard for determining whether a consensual police encounter becomes a detention depends on whether the police display such official authority that a "reasonable person would have believed he was not free to leave." *Wooden v. State*, 886 S.W.2d 385, 387 (Tex.App.—Houston [1st Dist.] 1994, no pet.), *citing United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

 The State relies largely on *Wooden* and *Grant* to make its case. In *Wooden*, police officers, acting on information about drug couriers, stopped and questioned the suspect in a bus terminal. 886 S.W.2d at 386. During a consensual conversation with the police officer, the suspect denied ownership of a bag he was carrying. 886 S.W.2d at 387. The officer searched the bag, found marihuana, and arrested the suspect. *Id.* This Court held the suspect abandoned the bag voluntarily because "there was not such a display of official authority that a reasonable person would have believed he was not free to leave...." *Wooden*, 886 S.W.2d at 388. *Wooden* is easily distinguished from the present case.

The encounter in *Wooden* occurred in the bus terminal, not inside a cramped bus. The officer told Wooden that he was free to leave. 886 S.W.2d at 386. The suspect had a clear path to leave. *Id.* at 387. When the officer asked if Wooden was carrying drugs, Wooden denied doing so, dropped the bag he was carrying, and denied ownership of the bag.

*Id.* Before searching the bag, the officer again told Wooden he was free to leave if he wanted to catch his bus. *Id.*

*Grant*involved another encounter in a bus terminal. Two police officers observed and then approached the suspects, and asked them questions. 832 S.W.2d at 625. Each suspect denied ownership of certain luggage as well as knowledge of the identity of the owner. *Id.* at 625. The court held that the encounter was one in a public place that did not constitute an "investigative detention." *Id.* at 627.

The encounters in both *Wooden* and *Grant*took place in a spacious bus station, not inside a cramped bus, as here. We are best guided by cases involving similar facts.

In *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), without articulable suspicion, two police officers walked up to Bostick, who was sitting in the rear of a bus during a rest stop. 501 U.S. at 431, 111 S.Ct. at 2384–85. The officers asked Bostick a few questions, and asked if they could search his bags for drugs, specifically advising him that he could refuse consent. 501 U.S. at 432, 111 S.Ct. at 2385.

The sole issue presented in *Bostick* was whether a police encounter on such a bus necessarily constitutes a "seizure" within the meaning of the Fourth Amendment. 501 U.S. at 433, 111 S.Ct. at 2386. The court concluded that in a situation where officers approach a passenger on a bus, the "free to leave" analysis is inapplicable, reasoning as follows:

> [T]he mere fact that Bostick did not feel free to leave the bus does not mean the police seized him. Bostick was a passenger on a bus that was scheduled to depart. He would not have felt free to leave the bus even if the police had not been present. Bostick's movements were "confined" in a sense, but this was the natural result of his decision to take the bus; it says nothing about whether or not the police conduct at issue was coercive.

501 U.S. at 435, 111 S.Ct. at 2387. The court stated that, instead, the proper inquiry in "bus encounter" cases is whether a "reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." 501 U.S. at 436, 111 S.Ct. at 2387. The crucial test is whether "taking into account *all of the circumstances surrounding the encounter,* the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Id.* The fact that the encounter takes place on a cramped bus *is one factor,* but it is not the only factor. *Id.*

*Bostick* is distinguishable from the present case. In *Bostick,* the officers boarded the bus during a scheduled stopover in Fort Lauderdale and they walked through the bus eyeing passengers who had been on the bus since Miami; as they walked through the bus, the officers happened to pick Bostick to talk to. 501 U.S. at 431, 111 S.Ct. at 2384–85. In the present case, the officers boarded the bus immediately after defendant boarded, they pulled the bus door shut, and they directly approached defendant; it was clear they had targeted him. In *Bostick,* there was no indication that the officers delayed the bus from departing at its regular time; here, the bus was detained past departure time so the officers could conduct their investigation. In *Bostick,* the officers made it clear that Bostick had the right to refuse to allow them to search his luggage; in the present case, Corley told defendant he had reason to believe defendant was carrying narcotics, and gave no indication that defendant was not required to cooperate.

The trial court effectively ruled that what began as a consensual conversation with Officer Corley on the bus became an unlawful detention. We conclude that, taking into account all of the circumstances surrounding the encounter, the trial court could have reasonably concluded that the officers' conduct communicated to defendant (and would have communicated to a reasonable man) that he was *not at liberty to ignore the officers' presence and go about his business. See Hunter v. State,* 955 S.W.2d 102, 104–105 (Tex.Crim.App.1997) (a relevant circumstance to consider is whether officer affirmatively stated that he believed defendant was carrying drugs); *Mitchell v. State,* 831 S.W.2d 829, 832–33 (Tex.App.—Houston [1st

Dist.] 1992, pet. ref'd) (under all the circumstances surrounding the police encounter on bus, reasonable person would not have believed he was free to terminate the encounter). We reach the same conclusion upon conducting a *de novo* review: defendant was "detained" or "seized" by the officers prior to his abandonment of the black bag.

Accordingly, we overrule the State's sole point of error, and we affirm the trial court's ruling.

NUCHIA, J., dissenting.

En banc consideration was requested.

A majority of the Justices of the Court voted to overrule the request for en banc consideration.

SCHNEIDER, C.J., and HEDGES and TAFT, JJ., dissenting from the overruling of the request for en banc consideration and noting their agreement with dissenting opinion.

NUCHIA, Justice, dissenting.

I must disagree with the opinion of the majority. Both the majority and the trial court below have missed the issue in this case: did the officer communicate a message that compliance was required? If the officer did, then the conversation was not consensual and defendant was illegally detained. If he did not, then the conversation was consensual and no detention occurred.

This case presents us with mixed questions of fact and law so *de novo* review is appropriate. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). In addition, since the mixed questions of law and fact turn on the evaluation of the credibility and demeanor of witnesses, we review the evidence in the light most favorable to the trial court's ruling and do not disturb on appeal any finding of fact supported by the record. *Id.*

When officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request to search his or her luggage, *as long as the police do not convey a message that compliance with their requests is required. Flori-*

*da v. Bostick*, 501 U.S. 429, 435, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991). The crucial test is whether "taking into account all of the circumstances surrounding the encounter, the police conduct would have *communicated* to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Id.* (emphasis added). The dispositive question is whether the officers conveyed a message to defendant that compliance with their request was required. *Hunter v. State*, 955 S.W.2d 102, 105 (Tex.Crim.App.1997).

We have filed by the trial court, findings of fact and conclusions of law from the suppression hearing. The trial court's first conclusion of law stated: "That the black bag which was searched by Officer Corley and Officer Ordaz was abandoned as a result of police activity." The court's second conclusion of law stated: "That Officer Corley did not have probable cause to approach the defendant and engage him in conversation or to detain the bus to conduct his investigation."

In finding of fact number two, the court found: "Officer Corley is a credible witness, and the Court accepts as true his testimony regarding his observations of the defendant and *his conversation with the defendant.*" (Emphasis added.) In finding of fact number three, the court found: "the defendant engaged in a *consensual conversation* with Officer Corley while on the bus." (emphasis added.) Clearly, the trial court believed Officer Corley, and, more importantly, found that the conversation between Corley and defendant was consensual. Irrespective of the trial court's legal conclusion that police activity was involved, if the conversation was consensual, whether the officers had probable cause or reasonable suspicion to detain the bus or not does not matter; defendant was not detained and the abandonment of the bag was not tainted by an illegal detention.

In reviewing the trial court's unambiguous finding that the conversation was consensual, the majority declares that what the trial court really meant to say was that the conversation started off as consensual and became an unlawful detention. Asserting that it is considering the totality of circumstances surrounding the encounter, the majority de-

cides the trial court could have reasonably concluded that the officers' conduct communicated to defendant that he was not at liberty to ignore the officers' presence and go about his business. In effect, the majority finds that the conversation was not consensual.

Then, in proceeding with its own analysis, the majority implicitly seems to rely on these facts: (1) that the encounter occurred on a "cramped bus"; (2) that the bus driver, knowing the officers were on board, apparently did not leave on time; (3) that defendant was not picked at random, (unlike in *Bostick*); (4) the officers boarded the bus immediately after the defendant; (5) the officers pulled the bus door closed after they entered; (6) defendant claimed Corley told him he had reason to believe defendant was carrying narcotics; and (7) Corley gave no indication that defendant was not required to cooperate.

Bearing in mind that what must be decided is whether or not the officer conveyed a message that compliance was required, I respectfully note some important circumstances not mentioned by the majority except in the recitation of the facts. First, and perhaps most important, Officer Corley testified that he showed defendant his badge, identified himself as a police officer, and *asked* defendant if he could talk to him. Defendant replied, "Sure." Then when Corley *asked* his destination, defendant responded, "Corpus Christi." When Corley *asked* if he could see defendant's ticket, defendant responded affirmatively, gave Corley his ticket and said, "Well, I'm actually going to Victoria." Corley then returned the ticket. In response to Corley's *request*, defendant gave Corley his driver's license. Corley then gave the driver's license back to defendant. Corley *asked* defendant if he was going to Victoria on business, and defendant said he lived there. Corley *asked* defendant how

long he had been in Houston, and defendant said he had been there for several days. Other circumstances worth noting are that the officers were not in uniform. Their weapons were not visible to defendant, and Officer Ordaz sat down in a seat a couple of rows in front of defendant, rather than adding his presence to Corely's near the defendant.

The totality of the circumstances shows that the conversation was consensual. It is true that the bus was cramped,[1] that Corley may have told defendant that he had reason to believe he was carrying narcotics, that the bus did not leave on time, that the door was closed, and that the two officers boarded immediately after defendant. However, these facts do not outweigh defendant's apparently consensual answer of "sure" and cooperative responses to all of Corely's questions, as well as the fact that the officers were in plain clothes, that their guns were not visible, that only one of them approached defendant, that they did not confiscate defendant's ticket or identification, and they did not move him to another location.

Even if we accept as true defendant's claim that Corely at some point told him he had reason to believe he had narcotics, there does not seem to be any message here that defendant had no choice but to comply. In fact, Corely's communications were generally in the form of requests, and defendant appeared to be happy to cooperate.

Finally, as to the majority's concern that Corley gave no indication that defendant was not required to cooperate, Corley all but indicated that defendant was not required to cooperate. He did nothing but ask or request, and he never resorted to his authority by telling or ordering defendant to do something or threatening him. *See, e.g., Mitchell v. State*, 831 S.W.2d 829, 832–33 (Tex.App.— Houston [1st Dist.] 1992, pet. ref'd) (defendant was detained where after police request

1. As to the "cramped bus," I agree that the more confining space of the interior of a bus differs from the typical encounter in an airport or in a bus station, and that this might affect whether defendant felt he was free to leave, however, defendant testified that he did not want to leave the bus. The question is did he feel free to refuse to engage in the conversation. The court in

*Bostick* noted that, "the mere fact that Bostick did not feel free to leave the bus does not mean that the police seized him." The court added, "this was the natural result of his decision to take the bus; it says nothing about whether or not the police conduct at issue was coercive." *Bostick*, 501 U.S. at 435, 111 S.Ct. at 2387.

to search bag, defendant asked if he had a privacy right, and officer said he could use a narcotics dog instead). The majority seems to be saying that an officer cannot just ask if he can speak to a person; first, he must warn the person that even though he is only asking, the person has a legal right to refuse. I do not think the law requires that warning.

The trial judge's finding of fact that the conversation was consensual was correct, but the conclusion of law that the bag was searched as a result of police activity was error. Unless an officer's request to speak with someone is a detention, defendant in this case was not detained. The bag was legally searched because it was abandoned. I would reverse.