TEXAS WORKERS' COMPENSATION
INSURANCE FUND, Appellant,

v.

Jose SERRANO and Graciela
Chairez, et al., Appellees.

No. 13–95–482–CV.

Court of Appeals of Texas,
Corpus Christi.

Jan. 7, 1999.

Suzanne M. Schwartz, McAllen, for Guardian Ad Litem.

Anne Marie McGowan, Lynne Liberato, Michelle E. McCoy Monger, Jeffery T. Nobles, Kent Geoffrey Rutter, Haynes and Boone, L.L.P., Houston, Roger W. Hughes, Adams & Graham, Harlingen, John T. Dailey, Strickland & Dailey, San Antonio, for Appellant.

Kevin Glasheen, Sam L. Fadduol Fadduol & Glasheen, Lubbock, Ramon Garcia, Edinburg, Frank Costilla, Costilla & Stapleton, Brownsville, Thomas M. Thomson, Thornton, Summers, Biechlin, Dunham & Brown, McAllen, Christopher Todd Carver, Lubbock, for Appellees.

Before Chief Justice SEERDEN, Justices DORSEY and CHAVEZ.

## OPINION

CHAVEZ, Justice.

In this case the Texas Worker's Compensation Insurance Fund (the Fund) argues that its subrogation interest in a settlement received by a worker's compensation beneficiary and his family from a third-party tortfeasor was circumvented by the manner that the settlement was apportioned among the family. The issue before us is whether there was legally and factually sufficient evidence to support the trial court's apportionment of the settlement proceeds among the appellees. We hold that legally and factually sufficient evidence was present, and affirm the judgment of the trial court.

This case comes to us on remand from the Texas Supreme Court. The first time this case was before us we held that the Fund had failed to offer sufficient evidence to establish a subrogation interest in medical expenses for the insured. Therefore, we affirmed the trial court's judgment denying a subrogation interest in those expenses. *Texas Worker's Compensation Ins. Fund v. Serrano*, No. 13–95–482–CV, —— S.W.2d —— (Tex.App.—Corpus Christi January 7, 1997) (not designated for publication). Because of that holding, we did not reach appellant's arguments regarding the apportionment of the settlement. The Texas Supreme Court reversed our decision and remanded the case to us to consider those arguments. *Texas Workers' Compensation Ins. Fund v. Serrano*, 962 S.W.2d 536 (Tex.1998).

Jose Serrano, a Mexican citizen, was severely injured while working as a migrant farm worker in Texas. Serrano was standing next to a truck trailer cleaning cabbages

and loading them into the trailer when another truck backed into him and pinned him between the truck and the trailer. Serrano was hospitalized for over a month and was paralyzed from the waist down as a result of the accident. His accident was covered by worker's compensation insurance with the Fund. The Fund had paid $247,602.20 for Serrano's medical bills and $3200.14 for lost wages by the time of trial.

Serrano and his wife, Graciela Chairez Serrano, individually and as next friend of their three minor children, sued Mares, the driver of the truck that backed into him, Saenz, the owner of the truck, and Ruiz, the owner of the trailer. Saenz and Mares settled with the Serranos for $750,000, and the Fund intervened to protect its subrogation interest in the Serranos' recovery. The trial judge approved the settlement and apportioned the proceeds as $250,000 for Jose Serrano, $200,000 for his wife, and $100,000 for each of his three minor children.

■ The workers' compensation carrier has a statutory right to reimbursement from the first monies paid to an injured employee or his representatives by a third-party tortfeasor, up to the amount of compensation paid, and can recover the amount from the employee or the third-party tortfeasor. TEX. LABOR CODE ANN. §§ 417.001, 417.002 (Vernon 1996); *U.S. Fire Ins. v. Hernandez,* 918 S.W.2d 576, 578 (Tex.App.—Corpus Christi 1996, writ denied). The carrier's right to reduce its liability from a payment of a third-party must not be compromised. *Hernandez,* 918 S.W.2d at 578. However, the carrier has subrogation rights only over that portion of an award or settlement which represents the interest of a workers' compensation beneficiary. *Id.* at 579. A trial court may not enter a judgment which arbitrarily compromises the carrier's right to subrogation by structuring the award so that a non-beneficiary recovers, but a beneficiary does not. *Id.* For purposes of determining the carrier's reimbursement interest, the proper division of a settlement between beneficiaries and non-beneficiaries presents an issue for the trier of fact based on the relative merits and worth of the claims involved. *Id.*

When reviewing a challenge to the legal sufficiency of evidence, we consider all the evidence in the record in a light most favorable to the party in whose favor the verdict has been rendered and indulge every reasonable inference in that party's favor. *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998). If the finding is supported by probative evidence, then we overrule the point and uphold the finding. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989). However, "[w]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). When confronting a factual sufficiency challenge, we overturn findings only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996).

■ Appellant acknowledges that all of the appellees have suffered as a result of Mr. Serrano's injuries, but it argues that the evidence was insufficient to support the trial court's apportionment of the settlement, which gave twice as much money to Mr. Serrano's family as it gave to Mr. Serrano himself. Because only Mr. Serrano is a beneficiary of worker's compensation insurance, only his portion is available for subrogation by the Fund.

At trial, appellees presented evidence that Mr. Serrano was paralyzed from the waist down as a result of his accident. He spent over one month in the intensive care unit of the hospital in Lubbock, and then approximately three months in a rehabilitation facility in Colorado. During his hospital stays, his wife and infant daughter stayed in the hospital with him, while his two sons lived with their aunt in Amarillo. Mr. Serrano's wife and children had been at their home in rural Mexico when the accident occurred, and traveled to the United States when news of the accident reached them. None of them spoke English or were familiar with customs or lifestyles in the United States. The two

older children were detained at the border for approximately one week because they did not have appropriate birth certificates to show the immigration authorities. While they were living in Amarillo they were only able to visit their parents during their two week break from school over the winter holidays.

Evidence was presented that the boys were significantly affected by their experiences. Previously they had been happy and "wild," but after the accident they became sad and withdrawn. There was evidence that the younger boy did not fully understand what had happened to his father, and was "angry" at his father for not being able to do things he previously could do. Both had taken on significant responsibilities involved in caring for their father, which took up much of their time outside of school. Mr. Serrano's young daughter, of course, will never know her father as a man who could walk and do other things generally taken for granted.

Mrs. Serrano had never traveled as far as the United States before and appeared "lost" when she arrived. There was evidence that she often felt overwhelmed by the circumstances of her life after her husband's accident, that she worried about her family's future, and was much sadder than before. Mr. Serrano testified that, in addition to his physical pains and limitations, he felt very badly about not being able to provide for his family and play with his children as he had done before. He, too, was described as being much sadder than before the accident.

Among reported cases, the case with facts most similar to the facts of this case is *Insurance Company of North America v. Wright,* 886 S.W.2d 337 (Tex.App.—Houston [1st Dist.] 1994, writ denied). In *Wright,* the surviving family of a man killed in a railway accident apportioned a settlement of $600,000 with $100,000 going to the man's wife, $160,000 going to each of his three adult, self-supporting sons, and $20,000 going to his mother. Only the deceased's wife was a worker's compensation beneficiary. The court of appeals held that this apportionment improperly circumvented the insurer's subrogation right, and reversed the judgment of the trial court. *Id.* at 342.

However, there are several important distinctions between *Wright* and the case before us. In *Wright,* the three sons were all adults. In this case, Mr. Serrano's children are still young, and may be less equipped to cope with the emotional upheaval their father's injuries have caused for them. In *Wright,* each of the sons received more money than the worker's compensation beneficiary. In this case, Mr. Serrano received more money than any other individual in his family. The Fund argues that "every injury suffered by Mr. Serrano's family was also suffered by him." We do not agree. While it is true that Mr. Serrano suffered mental anguish and loss of consortium, as did his family, the suffering of each member of the family is not identical. Mr. Serrano was already familiar with life in the United States, unlike his wife and children. The burden of caring for him fell on his wife and children. In many ways Mrs. Serrano had been forced to assume the role of head of the household, which was contrary to the traditions and culture she was familiar with.

Much of the damages in this case were of a variety that is difficult to quantify in dollar amounts. It is particularly difficult for us, sitting as an appellate court with only a cold record to review, to quantify the damages suffered by the individual members of the Serrano family. The trial court, which heard testimony from Mr. and Mrs. Serrano as well as witnesses familiar with the lives of the family, was in a better position to evaluate the credibility of the witnesses and other factors which are not apparent on paper. We are particularly reluctant to disturb findings from the trial court when the damages are based on claims such as the mental anguish, pain and suffering, disfigurement, physical impairment, and loss of consortium claims made in this case. *See Associated Indem. Corp. v. CAT Contracting,* 918 S.W.2d 580, 602–03 (Tex.App.—Corpus Christi 1996), reversed in part on other grounds, 964 S.W.2d 276 (Tex.1998) (mental anguish damages are incalculable and can not logically be refuted because there are no objective facts by which to measure the

amount); *see also Loyd Elec. Co., Inc. v. Millett,* 767 S.W.2d 476, 484 (Tex.App.—San Antonio 1989, no writ) (assessing damages for pain and suffering, physical impairment, and loss of consortium are particularly within the province of the jury). We conclude that the evidence was legally and factually sufficient to support the trial court's division of the settlement.

■ In accordance with the decision of the Texas Supreme Court and our decision today, we affirm the judgment of the trial court with respect to the apportionment among the Serrano family of the settlement from Saenz and Mares, but we reverse the judgment of the trial court denying the Fund's subrogation right to recover expenditures for Jose Serrano's medical expenses, and render judgment that the Fund be entitled to a subrogation right to the $250,000 apportioned to Jose Serrano from the settlement with Saenz and Mares.