**Terry ZONE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–01–00057–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 1, 2002.

---

David Cunningham, Houston, for Appellant.

Alan Curry, Asst. Dist. Atty., Houston, for the State.

Panel consists of Justices NUCHIA, KEYES, and SMITH.*

## OPINION

JACKSON B. SMITH, JR., Justice.

A jury convicted appellant, Terry Zone, of possession of more than one but less than four grams of cocaine. The jury also found two enhancement paragraphs to be true and assessed punishment at 40 years confinement. We affirm.

### Facts

The police received an anonymous tip that two black men were selling drugs near a gray car at 138 Goodson at approximately 1 p.m. on June 16, 2000. Houston Police Officer Randy Crowder was dispatched to the north Houston location to investigate the suspected drug sale. When Officer Crowder arrived at the address, he saw two black men, Troy Walker and appellant, under a tree near a gray Cadillac.

Officer Crowder testified in his affidavit that, when the men saw him arrive in his marked patrol car, Walker gave appellant something, and appellant began to quickly walk away from the patrol car. Officer Crowder told appellant to "wait a minute" and, when appellant ignored him, he told appellant to stop. Officer Crowder testified that, because he could not see appellant's hands, he pulled his gun, ran in front of appellant, and told appellant to show his hands. When Officer Crowder determined appellant had no weapons in his hands, he put his gun away. Officer Crowder then

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

asked appellant his name and why he would not stop when asked to do so. Appellant did not respond. Officer Crowder testified that, because he thought appellant might flee when he spoke to Walker, he handcuffed appellant, patted him down for weapons, and placed him in the back of his patrol car. Officer Crowder testified that while he patted down Walker and put him in the patrol car, he noticed appellant trying to swallow something. Officer Crowder then told appellant he could die if he swallowed drugs. Appellant refused to spit out the drugs, so Officer Crowder pressed his asp[1] on appellant's cheek. Appellant spit out 12 rocks,[2] at least 5 of which were later identified as cocaine.

The accounts of the events by appellant, Walker, and Marquita Gibson, a witness to the detention, differed from Officer Crowder's testimony. According to their testimony: (1) Walker did not hand anything to appellant; (2) appellant was already walking away from the tree before he noticed Officer Crowder's patrol car; (3) Officer Crowder ordered appellant to lie on the ground and handcuffed him; (4) Officer Crowder "slammed" appellant's face to the ground, choked appellant, and jammed his asp into appellant's mouth; and (5) appellant spit out "a substance" which Officer Crowder recovered.

### Motion to Strike

In his second point of error, appellant argues that the trial court erred in denying his motion to strike Officer Crowder's untimely filed affidavit. The affidavit was filed less than five days before the motion to suppress hearing. TEX.CODE CRIM. PROC. ANN. art. 28.01 (Vernon 1989).

---

1. An asp is a retractable baton or nightstick commonly used by law enforcement officers.

2. A "rock" is a small piece of crack cocaine.

In response, the State argued that, because of a scheduling conflict of which the court coordinator was aware, it was unable to timely file the affidavit. The State moved for a continuance and, alternatively, offered the live testimony of Officer Crowder. The trial court denied the request to let Officer Crowder testify, denied appellant's motion to strike Officer Crowder's affidavit, denied the motion for continuance, and denied appellant's motion to suppress.

Neither appellant nor the State presented any controlling authority to determine this matter. Appellant argues by analogy that, because a defendant's failure to timely file an election of punishment or a motion for new trial results in adverse consequences to a defendant, equity demands the State should suffer similar consequences when it does not file its affidavit at least seven days before the hearing. The State, however, contends the issue is moot because (1) the same issues were litigated at trial and (2) the issues were submitted to the jury.

■ Article 28.01 provides that "[w]hen a criminal case is set for such pre-trial hearing, any such preliminary matters not raised or filed seven days before the hearing will not thereafter be allowed to be raised or filed, except by permission of the court for good cause shown...." *Id.* at 28.01 § 2. Under article 28.01, preliminary matters include: the appointment of counsel, pleadings of the defendant, any special pleas, exceptions to the form or substance of the indictment, motions for continuance, motions to suppress evidence, motions to change venue, discovery motions, entrapment issues, and motions for appointment of an interpreter. *Id.* at 28.01 § 1. In *Clarke v. State,* 928 S.W.2d 709, 720 (Tex. App.-Fort Worth 1996, pet. ref'd), the court held that the State's filing of controverting affidavits to a defendant's motion to transfer venue was not subject to the seven-day time limitation under section 2 of article 28.01. We agree. The seven day deadline pertains to the filing of the motion, not the supporting affidavits. We hold that the State's filing of Officer Crowder's affidavit in response to appellant's motion to suppress is not subject to the section 2 article 28.01 requirements.

We overrule appellant's second point of error.

## Motion to Suppress

■ In his first point of error, appellant argues that the trial court erred in denying his motion to suppress concerning the search of his person. In reviewing the trial court's ruling on the motion to suppress, we apply a bifurcated standard of review. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000). We give almost total deference to the trial court's determination of historical facts, while we conduct a *de novo* review of the trial court's application of the law to those facts. *Id.* During a motion to suppress hearing, the trial court is the sole trier of fact; accordingly, the trial judge may choose to believe or disbelieve all or any part of a witness's testimony. *See State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000); *King v. State,* 35 S.W.3d 740, 742 (Tex. App.-Houston [1st Dist.] 2000, no pet.). When, as here, no findings of fact are filed, we must view the evidence in the light most favorable to the ruling and sustain the decision if it is correct on any applicable theory of the law. *Ross,* 32 S.W.3d at 855–56; *King,* 35 S.W.3d at 742.

## Reasonable Suspicion

■ In determining the reasonableness of the investigative detention, we examine the totality of the circumstances. *See Woods v. State,* 956 S.W.2d 33, 38 (Tex.Crim.App.1997). We look to the facts

available to the officer at the time of the detention to determine if reasonable suspicion existed. *Davis v. State*, 947 S.W.2d 240, 243 (Tex.Crim.App.1997). The police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts and the officer's experience and general knowledge, reasonably warrant the intrusion. *Citizen v. State*, 39 S.W.3d 367, 370 (Tex.App.-Houston [1st Dist.] 2001, no pet.). The officer must have a reasonable suspicion that some abnormal activity has occurred or is occurring; an indication that the activity is criminal in nature; and some suggestion to connect the detained person with the abnormal activity. *Willhite v. State*, 937 S.W.2d 604, 606 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd). The determination of reasonable suspicion must be based on common sense judgments and inferences about human behavior. *See Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000); *Simpson v. State*, 29 S.W.3d 324, 328 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

▬ When information alleged to support reasonable suspicion comes from a totally anonymous source, something more than the anonymous tip is required to provide the reasonable suspicion necessary to make a valid detention. *Guevara v. State*, 6 S.W.3d 759, 763 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd). Relying on information received from an informant is acceptable if the informant's statement is reasonably corroborated by other matters within the officer's knowledge. *Id.* Because Officer Crowder testified, by way of affidavit, that he saw Walker hand something to appellant and saw appellant flee, he possessed more information than the mere description of two black men near a gray car. Furthermore, the informant's tip was made more reliable when Officer Crowder arrived and determined the informant had accurately described the scene. *See Florida v. J.L.*, 529 U.S. 266, 272, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000).

Appellant argues that Officer Crowder was not justified in detaining him because, based on the totality of the circumstances, Crowder did not have a reasonable suspicion that criminal activity was underway. Appellant specifically contends that the following factors are insufficient to give rise to reasonable suspicion: (1) the area where appellant was stopped was known for drug activity and trespassers; (2) Walker's and appellant's contact constituted a furtive movement; and (3) appellant refused to comply with Officer Crowder's command to stop.

Appellant cites *Gurrola v. State*, 877 S.W.2d 300, 303 (Tex.Crim.App.1994), for the proposition that a detention cannot be based on an area's reputation for drug dealing. In *Gurrola*, a police officer saw four people arguing in a parking lot, detained them, searched them, and found narcotics on the defendant. *Id.* The *Gurrola* court held that the officer did not have reasonable suspicion to detain people arguing in a parking lot. *Id.* The facts of this case are distinguishable. First, Officer Crowder had been notified that narcotics were presently being sold at the location where appellant and Walker were seen. Second, Officer Crowder stated that he saw Walker hand something to appellant and that he saw appellant walk quickly away from Walker.

Appellant relies on *Hawkins v. State*, 758 S.W.2d 255, 260 (Tex.Crim.App.1988), *Gamble v. State*, 8 S.W.3d 452, 454 (Tex. App.-Houston [1st Dist.] 1999, no pet.), and *Cook v. State*, 1 S.W.3d 722, 726 (Tex.App.-El Paso 1999, no pet.) for the proposition that a furtive movement does not give rise

to reasonable suspicion.[3]

Appellant's case is distinguishable from *Hawkins, Gamble,* and *Cook.* Here, unlike *Hawkins* and *Gamble,* Officer Crowder saw appellant's furtive movement and Walker's handing something to appellant before he detained appellant. Furthermore, unlike *Cook,* Officer Crowder had a report that two black men were selling drugs near a gray car at the specific address.

▇▇▇ Appellant argues that his failure to stop and talk to Officer Crowder cannot be the basis of reasonable suspicion. An individual has the right to refuse to answer a police officer's questions and walk away unless the officer has reasonable suspicion to detain that person. *See Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1332–34, 75 L.Ed.2d 229 (1983); *Gurrola,* 877 S.W.2d at 303. Here, Officer Crowder had reasonable suspicion to stop and detain appellant based on the informant's tip that accurately described the scene, the handoff between appellant and Walker, and appellant's attempted evasion. *See Wardlow,* 528 U.S. at 125, 120 S.Ct. at 676 (held that nervous, evasive behavior is pertinent factor in determining reasonable suspicion); *Simpson,* 29 S.W.3d at 329.

## Scope of Detention

Appellant argues the detention exceeded its permissible scope because Officer Crowder never expressed a concern for his safety, and he did more than frisk appellant for weapons.

▇▇▇ An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Royer,* 460 U.S. at 500, 103 S.Ct. at 1325–26; *Davis,* 947 S.W.2d at 245. The investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *Davis,* 947 S.W.2d at 245.

▇▇ As a general rule, officers may use such force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety. *Rhodes,* 945 S.W.2d at 117 (citing *United States v. Sokolow,* 490 U.S. 1, 10, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1 (1989)). In *Rhodes,* the court held that a traffic stop was a valid investigative detention and not an arrest where the officer handcuffed the passenger. *Rhodes,* 945 S.W.2d at 115. The officer in *Rhodes* testified that he was not arresting the passen-

---

**3.** In *Hawkins,* a police officer patrolling a high crime area approached Hawkins, a known drug dealer; Hawkins walked away; the officer spoke to Hawkins and stopped him; and Hawkins threw a bag of heroin in a ditch and fled. *Hawkins,* 758 S.W.2d at 260. The *Hawkin's* court concluded there was nothing inherently suspicious about standing in a parking lot or refusing to speak to the officer, and it held the detention was impermissible. *Id.*

In *Gamble,* this Court held officers lacked reasonable suspicion to pat-down Gamble where the area had a history of drug sales, the police had frequent calls to the area over the last year, the defendant was walking near a residence to which police had been recently called several times, it was

3:00 a.m., and Gamble turned and walked away from a marked police car when it turned in his direction. *Gamble,* 8 S.W.3d at 453.

In *Cook,* a police officer saw Cook in an area known for drug activity moving his hand and thumb like other dealers; the officer approached Cook; Cook tried to walk away; and, the officer subdued and searched him. *Cook,* 1 S.W.3d at 726. The *Cook* court held the officer did not have a reasonable suspicion that criminal activity was taking place because the officer did not see the object in appellant's hand and he had no prior report concerning specific drug dealing by someone resembling the defendant.

ger. *Id.* He stated he handcuffed the passenger primarily out of concern for his own safety, because it was dark, and he was in a high-crime area. *Id.* He stated that the officers had just finished a car chase during which a bag was dropped from the car, and he was left alone with the passenger. *Id.*

■ Here, Officer Crowder saw Walker hand appellant what he suspected was drugs; he was alone and in an area known for drug trafficking; appellant did not respond to his questions; and, he was afraid appellant would flee. As a result, he handcuffed appellant and placed him in the patrol car to prevent him from fleeing while he questioned Walker. We conclude Officer Crowder used reasonable force to investigate appellant and prevent him from fleeing, and that he was, therefore, validly detained by Officer Crowder.

**Arrest**

■ Appellant also argues Officer Crowder illegally arrested him because, when Officer Crowder drew his gun and ordered appellant to lie on the ground, Officer Crowder lacked probable cause and did not have a warrant. The test for whether an officer has probable cause for a warrantless arrest is whether, at the moment of arrest, the facts and circumstances within the officer's knowledge, and of which the officer had reasonably trustworthy information, were sufficient to warrant a prudent person in believing that the arrested person had committed or was committing an offense. *Cedano v. State,* 24 S.W.3d 406, 410 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

■ Appellant also contends that, under the arrest definition found in article 15.22 of the Code of Criminal Procedure, he was arrested when Officer Crowder drew his gun, ordered him to the ground, handcuffed him, and took him to the patrol car. Article 15.22 provides that a "person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." Tex. Code Crim Proc. Ann. art. 15.22 (Vernon 1977). In *Francis v. State,* we held "the article 15.22 arrest definition is inadequate, *by itself,* to be used as the standard for distinguishing arrests from investigative detentions." *Francis,* 896 S.W.2d 406, 410 (Tex.App.-Houston [1st Dist.] 1995, pet. dism'd) (citing *Amores v. State,* 816 S.W.2d 407, 418 n. 3 (Tex.Crim.App.1991)); *see also Glenn v. State,* 967 S.W.2d 467, 471 (Tex.App.-Amarillo 1998), *pet. dism'd,* 988 S.W.2d 769 (Tex.Crim.App.1999). Our holding in *Francis* was based, in part, on two facts. First, the article 15.22 arrest definition was enacted prior to the emergence of the concept of a temporary investigative detention. *Id.* Second, we recognized that, in deciding cases like *Amores,* the Court of Criminal Appeals considered the officer's opinion and "other facts and circumstances of the detention, in determining whether an arrest has taken place." *Id.* (citing *Hoag v. State,* 728 S.W.2d 375, 379 (Tex.Crim.App.1987)); *see also Amores,* 816 S.W.2d at 411. Therefore, we determine whether appellant was arrested, not based on the definition of arrest in article 15.22, but by "looking at all of the circumstances surrounding the incident." *Amores,* 816 S.W.2d at 411.

■ We have already concluded that, under these facts, appellant was validly detained when Officer Crowder handcuffed him and placed him in the patrol car and attempted to question Walker. During appellant's detention, Officer Crowder saw appellant attempt to swallow the cocaine, and he was able to get appellant to spit the cocaine out of his mouth. We hold that, because probable cause developed during

the valid detention of appellant, he was not illegally arrested.

Based on the totality of the circumstances, and viewing the evidence in the light most favorable to the trial court's previous ruling, we conclude the trial court did not err in denying appellant's motion to suppress the cocaine. *See Ross,* 32 S.W.3d at 855–56; *Woods,* 956 S.W.2d at 38; *Francis,* 896 S.W.2d at 411.

We overrule appellant's first point of error.

### Legal Sufficiency

In his third point of error, appellant argues that the evidence was legally insufficient to show he possessed more than one gram but less than four grams of cocaine. Specifically, appellant contends that, because Houston Police Department chemist and criminalist Dennis Green did not test all 12 "rocks" of crack cocaine recovered from his mouth and because Green did not testify as to the total weight of the "rocks" he tested, the total weight of cocaine may have been less than one gram. Green testified that he tested at least five of the rocks, the rocks he tested contained cocaine, and the total weight of the 12 rocks was 1.3 grams.

■ In reviewing a legal sufficiency challenge, we inquire, "whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 320, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Thomas v. State,* 36 S.W.3d 709, 710 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd).

In *Gabriel v. State,* 900 S.W.2d 721 (Tex. Crim.App.1995) (plurality opinion), the Court of Criminal Appeals held that the evidence was legally sufficient to convict defendant of the offense of possession with the intent to deliver cocaine weighing more than 28 grams but less than 200 grams where: (1) the *Gabriel* chemist tested only 2.237 grams contained in 5 of 54 baggies recovered from the defendant; (2) the chemist testified the five tested baggies were 99% cocaine with a total weight of 2.237 grams; (3) the total weight of the contents of all 54 baggies was 35.2 grams; and (4) the chemist concluded the untested baggies contained only cocaine. *Id.* at 721–22. In holding that the evidence was legally sufficient, the *Gabriel* court concluded that "the manner of testing the substances by random sampling goes only to the weight the jury may give to the tested substances in determining the untested substance is the same as the tested substance." *Id.* at 722.

■ Here, the jury heard evidence that appellant hid all 12 rocks, weighing 1.3 grams, in his mouth. Viewing the evidence in the light most favorable to the prosecution, a jury could have reasonably found that the 12 rocks recovered from appellant's mouth were all cocaine and that they weighed in excess of 1 gram. *See Thomas,* 36 S.W.3d at 710.

We overrule appellant's third point of error.

### Conclusion

We affirm the judgment of the trial court.