Affirmed and Memorandum Opinion filed June 22, 2004















Affirmed and Memorandum Opinion filed June 22, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00213-CR

____________

 

ROY
LEONARD GREEN, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

 

_________________________________________________

 

On Appeal from the 262nd District Court

Harris County,
Texas

Trial Court Cause No. 927,570

 

_________________________________________________

 

M E M O R A N D U M   O P I N I O N

In his sole issue, appellant Roy
Leonard Green contends the trial court erred in denying his motion to suppress
evidence.  We affirm.

I.  Factual and Procedural Background








Drug Enforcement Administration (ADEA@) Agent Jack Schumacher received a
telephone call from an attorney concerning information his client, Gabriel
Monroe, had regarding drug trafficking in Houston.  Monroe
had not worked with the police or the DEA in the past.  Approximately three weeks after their initial
meeting, Monroe
telephoned Schumacher and stated he would be able to arrange the sale of two
kilograms of cocaine from a man named Roger Dyer.  According to testimony, Dyer insisted the
sale take place on October 15, 2002, at a Burger King located near the
intersection of Martin Luther King
 Boulevard and Interstate 610. With the assistance
of officers from the Pasadena Police Department Narcotics Division, Schumacher
set up surveillance at the Burger King. 
Dyer informed Monroe
that he did not have two kilograms of cocaine and would be relying on a
third-party supplier to consummate the deal. 
Dyer informed Monroe
that his supplier, who later turned out to be appellant, preferred to meet at a
shopping center located further north on Martin Luther King Boulevard rather than
the Burger King.

According to Schumacher=s testimony, Monroe informed him that Dyer would be
driving a black Harley Davidson-model Ford pickup truck.[1]  Schumacher testified that, upon arriving at a
service station located across the street from the shopping center, he observed
a black Harley Davidson pickup truck in the parking lot positioned in close
proximity to a gray Harley Davidson-model Ford pickup truck. Monroe was located
at the same service station as Schumacher and also testified that Dyer=s black truck was in the shopping
center parking lot.  Monroe, however, did
not recall seeing the gray truck, and did not know what type of vehicle the
supplier was driving.[2]  Schumacher was unwilling to purchase the
cocaine at the shopping center and insisted Monroe inform Dyer that the sale
had to take place at the Burger King.  By
radio, Schumacher kept the Pasadena police officers informed of the transpiring
events.








According to Detective Timothy Smith of the Pasadena Police
Department Narcotics Division, the black and gray pickup trucks, driven by Dyer
and appellant respectively, traveled in tandem southbound on Martin Luther King
Boulevard in the direction of the Burger King. 
Smith observed the vehicles pull off the road, at which time Dyer exited
his vehicle and talked to someone in the gray pickup truck.  Dyer telephoned Monroe and agreed to proceed
with the transaction at the Burger King. 
Monroe relayed this message to Schumacher and Schumacher informed the
Pasadena police officers.

Upon arriving at the Burger King, Dyer and appellant parked
their vehicles, and Monroe, who was already at that location, parked his
vehicle next to Dyer.  Appellant exited
his truck and walked to Dyer=s vehicle where he and Dyer conversed.  Monroe approached both men and appellant
returned to his truck, moving it to the other side of the parking lot.  Monroe entered Dyer=s vehicle and received a telephone
call from Schumacher asking if the cocaine was present.  Monroe told Schumacher the cocaine was at the
Burger King, but did not indicate which vehicle contained the contraband.  Schumacher radioed the Pasadena police
officers, signaling the officers to proceed.








Smith was the first officer on the scene. At the sight of
Smith=s unmarked police vehicle, appellant attempted
to back out of the Burger King parking lot, but was blocked by several
poles.  Smith placed his vehicle in front
of appellant=s truck, effectively blocking in
appellant.  Wearing a police raid vest,
Smith exited his vehicle with his service weapon drawn and ordered appellant to
display his hands.  While appellant was
raising his hands, a gun fell to his lap, at which time Smith gave appellant
additional commands to keep his hands raised. 
Appellant told Smith that he had a gun and that Smith should Abe cool because the dope is in the
back.@ 
Smith opened appellant=s door and removed appellant from the vehicle.  Appellant was placed on the ground and
handcuffed.  Turning back to appellant=s vehicle, Smith saw the gun lying on
the front seat of the truck.  Upon
looking through the side window, Smith observed a package wrapped in clear
plastic and black duct tape.  Smith
testified that, based on his experience, this type of wrapping was a common way
of packaging cocaine.  The package later
tested positive for the presence of cocaine. 

Appellant was charged by
indictment with possession of a controlled substance with intent to
deliver.  See Tex. Health & Safety Code Ann. ' 481.112
(Vernon 2003).  Following the trial court=s denial
of appellant=s motion to suppress, appellant pleaded
guilty.  Pursuant to a plea agreement,
the trial court sentenced appellant to thirty years=
confinement in the Texas Department of Criminal Justice, Institutional
Division.  

II.  Issue Presented

Appellant contends the trial court
erred in denying his motion to suppress in violation of appellant=s rights
under the Fourth Amendment to the United States Constitution, article I,
section 9 of the Texas Constitution,[3]
and article 14.01 of the Texas Code of Criminal Procedure.[4]


III.  Analysis

Appellant argues he was illegally
placed under arrest without a warrant when Detective Smith exited his vehicle
with his gun drawn and pointed at appellant. 
As a result, appellant claims the subsequent search of his vehicle was
also illegal.  The State contends that
Smith=s actions
amounted to a mere detention based on reasonable suspicion rather than an
arrest, that events quickly escalated to an arrest, and that the subsequent
search of appellant=s vehicle
was thereby lawful.  We agree.   








Generally,
we review the trial court=s ruling
on a motion to suppress evidence under an abuse-of-discretion standard.  Oles v. State, 993 S.W.2d 103, 106
(Tex. Crim. App. 1999).  A trial court=s ruling
on a motion to suppress, if supported by the record, will not be
overturned.  Brooks v. State, 76
S.W.3d 426, 430 (Tex.
App.CHouston [14th Dist.] 2002, no
pet.).  At a suppression hearing,
the trial judge is the sole finder of fact. 
Arnold v. State, 873 S.W.2d 27, 34 (Tex. Crim. App. 1993).  The trial judge is free to believe or
disbelieve any or all of the evidence presented.  See Romero v. State, 800 S.W.2d 539,
543 (Tex. Crim. App. 1990).

In
reviewing a trial court=s ruling
on a motion to suppress, we afford almost total deference to the trial court=s
determination of the historical facts that the record supports, especially when
the trial court=s
findings turn on evaluating a witness=s
credibility and demeanor.  State v.
Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).  We afford the same amount of deference to the
trial court=s ruling on Aapplication
of law to fact questions,@ also
known as Amixed questions of law and fact,@ if
resolving those ultimate questions turns on evaluating credibility and
demeanor.  Id.  In this case, the trial court did not make
explicit findings of historical fact, so we review the evidence in a light most
favorable to the trial court=s
ruling.  O=Hara v.
State, 27 S.W.3d 548, 550 (Tex. Crim. App. 2000). 

Review of
a trial court=s decision on a motion to suppress
calls for the reviewing court to consider de novo issues that are purely
questions of law, such as whether reasonable suspicion or probable cause
existed at the time of the search or seizure. 
See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).  If the trial court=s ruling
is reasonably supported by the record and is correct on any theory of law
applicable to the case, the reviewing court will sustain it upon review.  See Villarreal v. State, 935 S.W.2d
134, 138 (Tex. Crim. App. 1996).  








A.        Detention or Arrest?

Interactions between police and
civilians are divided into three categories: (1) encounters, (2) investigative
detentions, and (3) arrests.  See
State v. Larue, 28 S.W.3d 549, 553 n.8 (Tex. Crim. App. 2000).  AA person
is arrested when he has been actually placed under restraint or taken into
custody by an officer or person executing a warrant of arrest, or by an officer
or person arresting without a warrant.@  Tex.
Code Crim. Proc. Ann. art. 15.22 (Vernon 1977).  However, this Arestraint
of liberty@ standard is not adequate when
distinguishing between an arrest and a detention because it is a characteristic
common to both.  Dang v. State, 99
S.W.3d 172, 180 (Tex.
App.CHouston [14th Dist.] 2003,
pet. granted).  Whether a particular
seizure of a person is an arrest or merely a temporary investigative detention
is a matter of degree and depends upon the length of the detention, the amount
of force employed, and whether the officer actually conducts an investigation.  See Woods v. State, 970 S.W.2d 770,
775 (Tex. App.CAustin 1998, pet. ref=d). 

At the
suppression hearing, Detective Smith testified that once he received
information via radio indicating the cocaine was at the Burger King location,
he parked his unmarked vehicle behind appellant=s
truck.  Wearing a police raid jacket,
Smith exited his vehicle, approached appellant with his service revolver drawn,
and ordered appellant to display his hands. 
Smith testified he was attempting to detain appellant at this
point.  The officer=s
testimony is a factor to be considered, along with the other facts and
circumstances of the detention, in determining whether an arrest has taken
place.  Rhodes v. State, 945
S.W.2d 115, 117 (Tex. Crim. App. 1997).   









Based on the
testimony at the hearing, the length of the detention was very brief because
events escalated quickly.  Detective
Smith testified that when appellant obeyed the command to raise his hands,
Smith witnessed appellant drop a pistol into his lap.  According to Smith=s
testimony, as he gave appellant additional commands to continue raising his
hands, appellant stated, AI got a
gun.  I got a gun and it=s in the
back.@  Smith testified that appellant then stated, ABe cool
because the dope is in the back.@  While one factor for the court=s
consideration in determining whether a detention or arrest occurred is whether
the officer conducted an investigation, in this case, it appears from the
testimony that appellant=s actions
and statements escalated events so rapidly that Detective Smith was unable to
conduct an investigation.  

With
regard to the amount of force used, officers may use such force as is
reasonably necessary to effect the goal of the stop: investigation, maintenance
of the status quo, or officer safety.  Rhodes,
945 S.W.2d at 117.  Here, Detective Smith
testified that for safety purposes, he blocked in appellant=s vehicle
and exited the patrol car with his weapon drawn.  See id. at 117B18
(concluding officer=s temporary
investigative detention was reasonable under the circumstances when officer
handcuffed the appellant primarily out of concern for his safety).  In this case, Detective Smith knew a drug
transaction involving two kilograms of cocaine was scheduled to take place at
the Burger King location.  According to
his testimony, Smith was made aware by Agent Schumacher that two vehicles would
be involved.  Smith stated that he was the
first mobile unit to respond after he had been given the signal that the cocaine
was on the premises.  He testified that
when he pulled behind appellant=s truck,
appellant shifted his vehicle into reverse and attempted to back out of his
parking space, an effort hindered by poles located behind appellant=s
truck.  Under these circumstances, Smith=s actions
of blocking appellant=s vehicle
and approaching appellant with his service revolver drawn were reasonable to
maintain officer safety.  See Morris
v. State, 50 S.W.3d 89, 98 (Tex. App.CFort Worth 2001, no pet.) (holding handcuffing of the
appellant was reasonable force to maintain officer safety in situation
involving arranged reverse drug transaction with multiple parties and multiple
vehicles).  Therefore, we hold appellant
was not under arrest when Detective Smith blocked his vehicle and approached
appellant with his service revolver drawn. 









B.        Validity of Detention








To
temporarily detain a person for investigative purposes, an officer need have
only Aspecific
and articulable facts which, in light of a police officer=s
experience and personal knowledge taken together with rational inferences from
those facts, would reasonably warrant the intrusion upon a citizen=s
freedom.@  Hawkins v. State, 758 S.W.2d 255, 259
(Tex. Crim. App. 1988).  For a temporary
investigative detention to be valid, the following factors must be present: (1)
an unusual activity must be occurring or have occurred; (2) the accused must be
connected with the suspicious activity; and (3) the suspicious activity must be
connected with crime.  Davis v. State,
829 S.W.2d 218, 219 n.2 (Tex. Crim. App. 1992). 
Information from an informant that exhibits sufficient indicia of
reliability may provide the reasonable suspicion necessary to justify an
investigatory detention.  See Alabama
v. White, 496 U.S. 325, 329B30, 110
S. Ct. 2412, 2415B16, 110
L. Ed. 2d 301 (1990); Adams v. Williams, 407 U.S. 143, 146B47, 92 S.
Ct. 1921, 1923B24, 32 L. Ed. 2d 612 (1972).  Where there has been some cooperation between
police officers, the cumulative information known to the cooperating officers
at the time of the stop is to be considered in determining whether reasonable
suspicion exists.  Hoag v. State,
728 S.W.2d 375, 380 (Tex. Crim. App. 1987).             The
information possessed by Detective Smith at the time he approached appellant
came from Agent Schumacher by way of Gabriel Monroe, as well as from
observations made by both Smith and Schumacher. 
Although Schumacher testified that he did not consider Monroe to be a
police informant, but rather viewed him as a witness, Monroe provided
Schumacher with detailed information about the narcotics transaction.  Though this was the first time Monroe
provided information to the officers, Monroe testified that he had engaged in
narcotics transactions with Dyer and had personal knowledge that he dealt in
cocaine.  He met with Schumacher in
person to discuss setting up the narcotics transaction and later gave
Schumacher a specific date and location, informed him of the quantity of the cocaine,
and told him someone other than Dyer would be supplying the narcotics at the
transaction.  Monroe testified that he
saw two Harley Davidson-edition pickup trucks, one black and one gray, park at
the Burger King parking lot.  Monroe then
witnessed the driver of the gray truck, appellant, speak with Dyer before
Monroe gave Schumacher the signal that the cocaine was on the premises. 

This information was corroborated by the observations of both
Schumacher and Smith.  Schumacher testified
that, upon arriving at a service station located across the street from the
shopping center where Dyer had initially requested moving the transaction, he
observed a black Harley Davidson pickup truck in the parking lot positioned in
close proximity to a gray Harley Davidson pickup truck.  Schumacher testified that Monroe pointed to the two trucks in the parking lot, stating A[t]hat=s them right there@; however, Monroe
denied making the statement during his testimony.  In addition to receiving the information about
the transaction via Schumacher, Detective Smith personally observed the two
trucks travelling in tandem and watched as the occupants parked the trucks on
the side of the road at one point and conversed.  Smith also observed the trucks in the Burger
King parking lot when he was notified that the cocaine was at the
location.  See Zone v. State, 84
S.W.3d 733, 738 (Tex. App.CHouston [1st Dist.] 2002), aff=d 118 S.W.3d 776 (Tex. Crim. App. 2003)
(stating anonymous informant=s tip made more reliable when officer arrived and determined
informant had described scene accurately). 
Appellant then attempted to leave his Burger King parking space at the
sight of Smith=s unmarked police vehicle. 

Thus, the officers
possessed reasonable suspicion to believe appellant, as the driver of the gray
pickup truck, was involved in unusual activity connected with crime, namely a
scheduled narcotics transaction.  The
information provided by Monroe, coupled with the officers= observations,
gave Smith reasonable suspicion to temporarily detain appellant.  See Doyle v. State, 779 S.W.2d 492,
495 (Tex.
App.CHouston [1st Dist.] 1989, no pet.) (holding
officers justified in stopping car for further investigation when officer had
information from known informant that narcotics transaction was about to take
place and had corroborated information by personal observation).  We conclude that appellant=s detention did
not rise to the level of an arrest and was reasonable and justified under the
circumstances.    








C.        The Search of Appellant=s Vehicle

The search of
appellant=s vehicle did not
occur until after appellant dropped a pistol in the officer=s presence and
made statements indicating he possessed both a weapon and narcotics.  Specifically, Detective Smith testified that
when appellant obeyed the command to raise his hands, appellant dropped a
pistol into appellant=s lap.  According to Smith=s testimony, as he
gave appellant additional commands to continue raising his hands, appellant
stated, AI got a gun.  I got a gun and it=s in the back.@  Smith testified that appellant then stated, ABe cool because
the dope is in the back.@  At that point, Smith commanded appellant to
exit the vehicle and lay on the ground. 
Appellant was then handcuffed.  








The subsequent
search of appellant=s vehicle was
valid on several grounds.  First, Smith
testified he saw the pistol resting on the seat of appellant=s vehicle because
the driver=s door was
open.  In addition, according to Smith=s testimony, he
observed the cocaine in appellant=s backseat through
the side window of appellant=s vehicle.  Evidence is lawfully seized if it meets the
requirements of the Aplain view@ doctrine.  Dickey v. State, 96 S.W.3d 610, 613 (Tex. App.CHouston [1st Dist.] 2002, no
pet.).  That doctrine requires that (1)
law enforcement officials have a right to be where they are and (2) it must be
immediately apparent that the item seized constitutes evidence (i.e., there is
probable cause to associate the item with criminal activity).  Ramos v. State, 934 S.W.2d 358, 365
(Tex. Crim. App. 1996).  Here, Smith was
in a public place C a restaurant
parking lot C performing an
investigative detention, when appellant made statements indicating he possessed
a weapon and narcotics.  Moreover, police
officers may conduct a warrantless search of an automobile if they have
probable cause to believe there is contraband or the instrumentalities of a
crime located somewhere inside the vehicle. 
State v. Guzman, 959 S.W.2d 631, 632, 634 (Tex. Crim. App.
1998).  Finally, once appellant dropped
his pistol in Smith=s view and made
the statements regarding the weapon and the narcotics, Smith possessed probable
cause to arrest appellant, and the search of his vehicle became a valid search
incident to arrest.  See Brooks
v. State, 76 S.W.3d 426, 434 (Tex. App.CHouston [14th
Dist.] 2002, no pet.); Doyle, 779 S.W.2d at 495 (finding admission to
drug possession gave officer probable cause that offense was being committed in
presence and seizure of contraband was justified).   

Therefore, the
trial court did not err when it denied appellant=s motion to
suppress the evidence obtained during the search.  Accordingly, we overrule appellant=s sole issue and
affirm the trial court=s judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Memorandum Opinion filed June 22, 2004.

Panel consists of Justices Edelman, Frost, and Guzman.

Do Not Publish C Tex. R. App. P.
47.2(b).

 











[1]  Appellant=s vehicle is referred to interchangeably as gray or
silver throughout the record.  For
consistency, we will refer to the color as gray.





[2]  A DEA report
authored by a person riding with Schumacher on the day of the arranged drug
transaction did not mention the agents leaving the Burger King and travelling
to the shopping center. The same DEA report also did not mention the sighting
of appellant=s gray truck until the truck was seen entering the
Burger King shortly before the arrest. 
This aspect of the DEA report was confirmed by a Pasadena police report.





[3]  Although
appellant asserts error under both the United States and Texas Constitutions,
he does not indicate how his rights under the Texas Constitution are different
from those under the federal constitution. 
As a result, we decline to address appellant=s state constitutional argument.  See Arnold v. State, 873 S.W.2d 27, 33
& n.4 (Tex. Crim. App. 1993). 





[4]  Appellant
argues Detective Smith lacked authority to arrest him without a warrant because
no offense was committed in Smith=s
presence, as required for a warrantless arrest under article 14.01 of the Texas
Code of Criminal Procedure.