

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00041-CR

---

DEZMONE PINKSTON                                         APPELLANT

V.

THE STATE OF TEXAS                                             STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
TRIAL COURT NO. 1329761D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

In two issues, appellant Dezmone Pinkston appeals his conviction for possession of cocaine in an amount of less than one gram. *See* Tex. Health & Safety Code Ann. § 481.115(b) (West 2010). Because we hold that the trial court erred by denying Pinkston's motion to suppress, we reverse the trial court's

---

[1]*See* Tex. R. App. P. 47.4.

judgment and remand the cause for further proceedings consistent with this opinion.

## II. BACKGROUND

After the State charged Pinkston with possession of cocaine, he filed a motion to suppress. At the suppression hearing, the State stipulated that the officers in this case did not have a warrant to arrest or detain Pinkston prior to searching his person and discovering cocaine.

Fort Worth Police Officer Barrett Galbraith testified that on June 7, 2013, he and fellow officers conducted a walk-through of the Regency Oaks Apartments, an area that, according to Galbraith, is "very problematic" and known as an area where "violent crimes [and] narcotics crimes" occur with frequency. Galbraith also said that the area is known as a place where domestic and violent family crimes occur. Galbraith did not state at what time he and fellow officers conducted their walk-through, but he did testify that his shift that night was from 8:00 p.m. until 6:00 a.m. and that his encounter with Pinkston occurred while it was "dark"; and the parties' agreed-to proposed findings of fact and conclusions of law reflect that Galbraith's encounter with Pinkston occurred "at approximately midnight." There is, however, no evidence that the trial court adopted these proposed findings and conclusions.

By Galbraith's account, he and fellow officers had been at the apartment complex for more than twenty minutes and most of the people around had begun to "go inside because they saw [the police] walking around" when he heard

2

"arguing . . . to the north" of his location. Galbraith testified that although he could not see who was arguing, the arguing was loud enough that he could hear it despite the location of the argument occurring a building over from where he was. Galbraith said that in his report from that night he described the argument as "yelling and screaming." According to Galbraith, the tenor of the argument led him to believe that he needed to investigate "an assault [or] something of that nature." He also described the argument as being consistent with "a domestic assault." Galbraith averred that as he approached the area where the argument was occurring, he witnessed Pinkston and a female arguing but that once the couple saw him, "they stopped arguing and began to walk away."

Galbraith said that the couple's conduct of ceasing their argument and walking away led him to believe that "they were trying to get away from [him] so that they didn't have to talk to [him]." Galbraith stated to the couple that they should come back and talk to him, but as the couple continued their retreat, Galbraith declared, "Stop, police." At that moment, the female stopped, but Pinkston continued walking away. From there, Galbraith and his fellow officers chased down Pinkston and arrested him for "[e]vading arrest or detention." After patting down Pinkston, Galbraith found "an off white rock-like substance" on Pinkston's person that Galbraith believed to be crack cocaine.

The trial court denied Pinkston's suppression motion, and he later entered into a plea bargain with the State whereby he pleaded guilty to possession of

less than one gram of cocaine. The State recommended sixty days' jail time. The trial court entered judgment accordingly, and this appeal followed.

### III. DISCUSSION

In two issues, citing both state and federal principles of search and seizure, Pinkston argues that the trial court abused its discretion by denying his motion to suppress because Galbraith lacked reasonable suspicion to detain him at the moment Galbraith announced, "Stop, police." In support of his position, Pinkston cites the court of criminal appeals's decision in *Gurrola v. State.* 877 S.W.2d 300, 303 (Tex. Crim. App. 1994). The State argues that this case is distinguishable from *Gurrola.* Furthermore, the State argues that *Gurrola* "seems to be simply outdated" as a touchstone for determining reasonable suspicion. We agree with Pinkston.

### A.    Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000),

4

*modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

### B.    No Reasonable Suspicion to Detain Pinkston

The Fourth Amendment, and its corresponding state principles codified in the Texas Code of Criminal Procedure, protects against evidence being used at trial when it was obtained through unreasonable searches and seizures by government officials. U.S. Const. amend. IV; Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005); *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of

5

producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford*, 158 S.W.3d at 492. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards any subjective intent of the detaining officer and looks solely to whether an objective basis for the detention exists. *Id.*

6

Here, the circumstances that Galbraith testified about that gave him reasonable suspicion to detain Pinkston were that Pinkston's argument with his female companion was of such volume and nature that he believed that "a possible offense" in the nature of an "assault" was transpiring. Galbraith also testified that this argument occurred in an area known for domestic violence and that this all transpired while it was "dark" outside. And, according to Galbraith's testimony, because Pinkston and the female stopped arguing and began to walk away upon seeing the police, the totality of this conduct provided him with reasonable suspicion that a crime had been committed.

We agree with Pinkston that the Court's decision in *Gurrola* is instructive in this case. 877 S.W.2d at 304. In *Gurrola*, during the afternoon, an unknown man reported to a patrol officer that there was a disturbance at a nearby apartment complex. *Id.* at 301. The officer knew the apartment complex to be "an unsafe location that had incurred several complaints of disturbances from area residents." *Id.* The officer drove over to the parking lot of the complex and saw three men and a woman engaged in what appeared to be an argument. *Id.* The officer approached the individuals to find out "what was going on," but as he did so, they all began to leave. *Id.* After the individuals began to disperse, the officer ordered them to stop and the officer then conducted a pat-down search and discovered cocaine on Gurrola's person. *Id.* The Court held that the officer lacked reasonable suspicion to detain Gurrola even though the officer had received an uncorroborated complaint of a disturbance; the argument the officer

7

witnessed occurred in a "high-crime" area; and the individuals involved in the argument dispersed upon seeing the officer. *Id.* at 303, 305.

Here, Galbraith lacked even more articulable facts than the officer in *Gurrola*. In this case, like in *Gurrola*, the argument Galbraith witnessed occurred in a high-crime area and the participants of the argument dispersed upon seeing the police. But unlike in *Gurrola*, the officers in this case had not received an uncorroborated complaint of a disturbance. The only distinction that this court can detect that differs in this case from *Gurrola* is that in *Gurrola* the argument occurred during the day, and in this case, the argument occurred while it was "dark." But time of night alone is not sufficient to rise to the level of reasonable suspicion. *See Crain*, 315 S.W.3d at 53 ("Neither time of day nor level of criminal activity in an area are suspicious in and of themselves.").

Furthermore, we are unpersuaded by the State's argument that *Gurrola* is no longer good law. First, it is not this court's prerogative to refuse to follow the court of criminal appeals's decisions. *See Wiley v. State*, 112 S.W.3d 173, 175 (Tex. App.—Fort Worth 2003, pet. ref'd) ("It is axiomatic that a Court of Appeals has no power to 'overrule or circumvent [the] decisions, or disobey [the] mandates,' of the Court of Criminal Appeals."). Moreover, the court of criminal appeals has recently cited *Gurrola* in its analysis of what constitutes reasonable suspicion to detain an individual. *Crain*, 315 S.W.3d at 49, n.16. *Crain* is also instructive to this case. In *Crain*, the Court held that an officer lacked reasonable suspicion to detain Crain even though Crain was walking at night in a residential

8

area known for night-time burglaries and Crain had exhibited the "suspicious" conduct of "grabb[ing] at his waist" upon seeing a police officer. *Id.* at 53. Like in *Crain*, in this case, the circumstances of an argument at night in an area known for crime coupled with Pinkston's constitutional right to walk away from police also do not rise to the level of reasonable suspicion. *See Zone v. State*, 84 S.W.3d 733, 738–39 (Tex. App.—Houston [1st Dist.] 2002), *aff'd*, 118 S.W.3d 776 (Tex. Crim. App. 2003) ("An individual has the right to refuse to answer a police officer's questions and walk away unless the officer has reasonable suspicion to detain that person."). We hold that Galbraith lacked reasonable suspicion to detain Pinkston. Thus, we hold that the trial court erred by denying Pinkston's motion to suppress the evidence found on his person after Galbraith detained him, and we sustain both of Pinkston's issues on appeal.

## C.    Was the Denial of Pinkston's Motion to Suppress Harmful?

Galbraith's unlawful stop of Pinkston violated his Fourth Amendment rights, and thus the cocaine discovered from that detention should have been suppressed. Because the trial court committed constitutional error by denying Pinkston's motion to suppress, we must reverse his conviction unless we determine beyond a reasonable doubt that the error did not contribute to his conviction. *See* Tex. R. App. P. 44.2(a). We hold that the trial court's denial of Pinkston's motion to suppress was harmful error because it "undoubtedly contributed in some measure to the State's leverage in the plea bargaining process and may well have contributed to [Pinkston's] decision to relinquish [his]

9

constitutional rights of trial and confrontation in exchange for a favorable punishment recommendation." *See Castleberry v. State*, 100 S.W.3d 400, 404 (Tex. App.—San Antonio 2002, no pet.) (*citing McKenna v. State*, 780 S.W.2d 797, 799 (Tex. Crim. App. 1989)). Indeed, the cocaine found on Pinkston during Galbraith's illegal detention is the only evidence that Pinkston possessed cocaine.

## IV. CONCLUSION

Having sustained both of Pinkston's issues on appeal, we reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 19, 2015